**Phyllis L. SCANNELL, Plaintiff,**

v.

**BEL AIR POLICE DEPARTMENT, Town of Bel Air, William N. McFaul, Leo F. Matrangola, John W. Harkins, Norman E. Ross and Wallace A. Harward, Defendants.**

**Civil No. AMD 96–1632.**

United States District Court,
D. Maryland.

June 16, 1997.

Douglas W. Desmarais, Smith & Downey, Baltimore, MD, for Plaintiff.

Richard T. Colaresi, Bowie, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff Phyllis L. Scannell has filed a three-count complaint against the Bel Air Police Department ("the Department"), the Town of Bel Air, the Town Administrator, the Chief and Deputy Chief of the Town Police, and a lieutenant and a sergeant at the Department, alleging the following: a hostile work environment claim based on her gender and a retaliation claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and an equal protection claim under 42 U.S.C. § 1983. Before the Court is Defendants' motion to dismiss for failure to state a claim and/or for lack of subject matter jurisdiction.[1] Plaintiff consents to the dismissal of her constitutional claims. I have given careful attention to the parties' memoranda respecting the other claims, and a hearing is not needed. Local Rule 105.6. For the reasons explained below, I shall grant in part, and deny in part, the Defendants' motion as to the discrimination claims, and grant the motion as to the constitutional claims.

(i)

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D § 1349 at 192–93 (1990). Rule 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A claimant is not required to "set out in detail the facts upon which he bases his claim" so long as the claim "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103.[2] Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S.

---

1. Manifestly, Defendants' challenge to subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is misplaced. What seems to be asserted as a lack of subject matter jurisdiction is, in actuality, a contention that Plaintiff has not satisfied the preconditions to suit under Title VII. *See Murphy v. West,* 945 F.Supp. 874, 876–77 (D.Md.1996). As discussed *infra* pp. 1066–1068, Plaintiff has properly exhausted her administrative remedies, including compliance with Title VII's naming requirement.

2. Defendants may have sought application of a special "heightened pleading" rule perhaps applicable in cases in which qualified immunity is asserted and which may have survived the Supreme Court's rejection of a general heightened pleading requirement for civil rights cases in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *See Jordan by Jordan v. Jackson,* 15 F.3d 333, 337–340 & n. 5 (4th Cir.1994); *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995) (en banc). The dismissal of the § 1983 claim here removes that issue from the case.

411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). Only when the factual allegations in support of a claim are not well–pleaded (e.g., when they are "functionally illegible" or "baldly conclusory," *Shuster v. Oppelman,* 962 F.Supp. 394, 395 (S.D.N.Y.1997)) should they not be accepted as true and the claim dismissed.

### (ii)

Plaintiff has been employed at the police department of the Town of Bel Air, Harford County, Maryland, since 1982, most recently as a detective. On or about April 25, 1994, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging gender discrimination and retaliation. (The allegation of retaliation apparently related to an earlier charge which had been filed with the Harford County Human Rights Commission.) Plaintiff named the "Bel Air Police Department" as the "employer" in the appropriate space on the form and mentioned Sergeant Harward in the text of the charge. Less than one month later, on May 20, 1994, Plaintiff filed a second EEOC charge, *i.e.,* a charge of retaliation. She again identified the Department as her employer. In the factual narrative, she referred to certain incidents involving "the Chief" (*i.e.,* Matrangola) and her "first and second line supervisors." [3]

After receiving a right–to–sue letter, Plaintiff timely filed a complaint with this Court, alleging that throughout her tenure with the Department she has been "subjected to different terms, conditions, and privileges of her employment on the basis of her sex." Comp. ¶ 17. She also alleges that, as a result of Defendants' conduct, she "has been forced to work in a hostile or abusive working environment, on the basis of her gender." *Id.* ¶ 18. This "abusive working environment has been so pervasive and severe that it has interfered with Plaintiff's ability to perform her job and has significantly interfered with Plaintiff's psychological well–being." *Id.* Plaintiff specifically alleges that, "among other things," she was

"a. Excluded by Harward from receiving important and vital information regarding the status of cases and assignments within the Department ... [whereas t]his information is routinely passed on to a male detective within the same Department;

"b. Ignored and ostracized by Harkins, Harward, Ross, and Matrangola;

"c. ... verbally assaulted and physically threatened by Harward;

"d. ... restricted in her activities on behalf of a charitable organization, when males in the Department routinely are allowed to spend time at work on behalf of charitable organizations;

"e. ... subjected to constant harassment and criticism to a degree far more severe than her male counterpart[s]; and

"f. ... deprived of her rights to voice complaints within the normal departmental channels."

*Id.* Plaintiff further alleges that "[w]hen she complained to Harkins about her gender–related mistreatment, Harkins informed her that if she voiced any further complaints about the matter, he would be 'forced' to reassign her to another position." Harkins then tore up Scannell's written complaint "inches in front of her face." *Id.* ¶ 19.

Plaintiff also alleges that on May 17, 1994, less than one month after filing the April charge, she was called into Matrangola's office for a meeting with Matrangola, Harward, and Harkins. There, Matrangola "insinuated" that Plaintiff could lose her job if she persisted in pursuing her complaints of discrimination and retaliation. *Id.* ¶ 22. Two days later, on May 19, 1994, "Plaintiff arrived at work to find that all of the reports that she had turned in to Harward had been returned [to her] with notes attached indicating that things were missing or that something additional should have been done, even though the reports had, in fact, been satisfactorily completed." *Id.* ¶ 23. After protesting Defendants' conduct, Plaintiff was allegedly subjected to "heightened ridicule, isolation, and discrimination." *Id.* ¶ 24. Plaintiff further alleges that despite actual

**3.** Apparently, Plaintiff's first and second–line supervisors are defendants Harward and Ross, although this is not entirely clear in the record.

knowledge of Defendants' discriminatory conduct, Defendants "elected not to take appropriate disciplinary and remedial action" in light of these incidents. *Id.* ¶ 25.

### (iii)

The Defendants present four issues for resolution, as follows:

(1) Whether Plaintiff has alleged conduct sufficient to constitute an "abusive and hostile" work environment satisfying the elements of a gender discrimination claim under Title VII.

(2) Whether Plaintiff has alleged sufficient facts to show that she suffered "adverse employment action" as necessary to comprise a retaliation claim under Title VII.

(3) Whether Plaintiff has complied sufficiently with the naming requirement under Title VII to permit those claims to go forward.

(4) Whether Plaintiff has alleged a cognizable claim under Title VII for individual liability. I shall address each issue in turn.

### (iv)

Defendants challenge the legal sufficiency of the claim asserted in Count I. They contend that Plaintiff has alleged no more than "isolated incidents of offensive or insulting behavior." Defs.Mem. at 3. Defendants further maintain that Plaintiff's allegations are only "conclusory" and "generalized statements." *Id.* at 4–5. Defendants posit that the alleged conduct, even considered in the light most favorable to Plaintiff, does not constitute an actionable claim of hostile work environment.

Title VII prohibits "an employer" from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). In 1986, the Supreme Court recognized Title VII's expansive scope when it held that the prohibition against "discrimination" protects employees from hostile environment sex discrimination. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49

(1986). Noting that "the language of Title VII is not limited to 'economic' or 'tangible' discrimination" but "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment," *id.* at 64, 106 S.Ct. at 2404 (internal quotations omitted), the *Meritor* Court endorsed the substantial body of lower federal court case law which had established that a claim of hostile environment sex discrimination is actionable under Title VII. *Id.* at 65–67, 106 S.Ct. at 2404–06.

■ To sustain a claim of sexual harassment under Title VII, Plaintiff must allege and prove that (1) the subject conduct was unwelcome; (2) it was based on her sex; (3) it was sufficiently severe or pervasive to alter plaintiff's conditions of employment and to create an abusive or hostile work environment; and (4) it was imputable on some factual basis to the employer. *Spicer v. Commonwealth of Va.,* 66 F.3d 705, 710 (4th Cir.1995) (en banc). Defendants' motion focuses on the second and third elements.

■ "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The "line between a merely unpleasant working environment ... and a hostile or deeply repugnant one" is not always easy to draw. *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7th Cir.1995). Title VII is not designed "to purge the workplace of vulgarity." *Id.* at 430. In determining whether the alleged harassment of an employee is sufficiently severe or pervasive to bring it within Title VII's scope, a court must examine "all the circumstances, [including] the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994), quoting *Harris,* 510 U.S. at 23, 114 S.Ct. at 371 (alterations in original).

■ In the present case, when the allegations of the complaint are viewed in the light most favorable to Plaintiff, it is reasonable to infer that Defendants' alleged conduct gives rise to a cognizable hostile environment claim. Defendants' alleged conduct—withholding "important and vital" information necessary to perform the tasks assigned; making threats; ignoring and ostracizing Plaintiff; restricting Plaintiff's time for charitable activities as compared to the time allowed male officers; and defiantly tearing up a sexual harassment complaint in close proximity to Plaintiff—could be deemed by a reasonable person to have created a work environment which a reasonable person in Plaintiff's situation would deem "abusive and hostile." *See Harris,* 510 U.S. at 24–25, 114 S.Ct. at 372 (Scalia, J., concurring) ("[T]he test is not whether work has been impaired, but whether working conditions have been discriminatorily altered."). Moreover, Plaintiff alleges that such actions were not isolated, but have recurred throughout her career at the Department. Comp. ¶ 18.

In any event, Plaintiff alleges that the harassment interfered with her ability to perform her work and significantly affected her psychological well-being. *Id. See Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 620 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987) (proof that the harassment significantly affects plaintiff's psychological well–being essential element of harassment claim); *but see Harris,* 510 U.S. at 22, 114 S.Ct. at 370–71 ("But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well–being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers."). No greater specificity is required to overcome a motion under Fed. R.Civ.P. 12(b)(6). Drawing all inferences in favor of the Plaintiff, Defendants' alleged conduct, considering all the circumstances, may reasonably be deemed sufficiently severe and pervasive to create a hostile and abusive environment under Title VII. Any further details relating to Plaintiff's claims must properly await discovery. *Conley,* 355 U.S. at 47, 78 S.Ct. at 102–03.

Defendants seem to rely heavily on the absence of any overtly *sexual* content in the behaviors underlying Plaintiff's allegations. Concededly, the Defendants should not be faulted for questioning whether Plaintiff has simply converted a *disparate treatment* claim into a *gender harassment* claim. Nevertheless, Plaintiff is the master of her claims and has elected to cast her claim in Count I as a hostile environment claim rather than a disparate treatment claim. I have observed:

Behavior that impermissibly "differentiates a particular employee or group of employees on the basis of race, sex, religion, or national origin violates the equal 'conditions of employment' requirement of Title VII." *McKinney v. Dole,* 765 F.2d 1129, 1139 (D.C.Cir.1985); 42 U.S.C. § 2000e–2(a)(1). The Supreme Court readily recognized that harassment that would not occur but for the sex of an employee is such an example. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) ("[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex."); *cf. Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987) ("sexual harassment . . . is now universally recognized as employment discrimination within the meaning of Title VII."), *appeal after remand,* 928 F.2d 966 (10th Cir.1991); *Garber v. Saxon Business Products, Inc.,* 552 F.2d 1032 (4th Cir.1977) (finding that employers violate Title VII by permitting male supervisors to demand sexual favors from female employees).

To be sure, the phrase "sexual harassment" can be a misnomer. As several circuits have now recognized, the touchstone of an actionable Title VII sexual harassment claim is not whether the offensive conduct includes "sexual advances or . . . other incidents with clearly sexual overtones." *McKinney,* 765 F.2d at 1138; *Hicks,* 833 F.2d at 1415 (adopting *McKinney v. Dole* ); *Hall v. Gus Construction Co., Inc.,* 842 F.2d 1010, 1014 (8th Cir.

1988) (aligning its holding with *McKinney v. Dole* and noting that "[i]ntimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances"); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir.1990) (finding that impermissible discrimination is not necessarily comprised of sexual overtones and holding that it is only necessary to show that but for the plaintiff's gender she would have been treated differently). The critical inquiry "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring); *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F.Supp. 1495, 1501 (E.D.Va.1996). Indeed, in an effort to distinguish this "nonsexual" harassment from harassment which is sexual or erotic in nature, the Northern District of Illinois refers to the former as "gender harassment." *See Cline v. Gen. Elec. Capital Auto Lease*, 757 F.Supp. 923, 931 (N.D.Ill.1991).

*Mentch v. Eastern Sav. Bank, FSB*, 949 F.Supp. 1236, 1246 (D.Md.1997). A similar approach is appropriate here. Furthermore, even if there is scant reason on the face of the complaint to support the conclusion that the mistreatment to which Plaintiff was subjected was truly on account of her gender rather than on some other ground, at this early stage of the case, no more than what has been provided in her allegations is required to state a claim. Whether Plaintiff can marshal the proof necessary to support her claims is not yet an issue before the Court. Accordingly, Plaintiff is entitled to go forward with her claim as alleged in Count I.

(v)

■ Title VII prohibits an employer from taking retaliatory action against an employee who opposes or complains about an unlawful employment practice or otherwise exercises rights under the statute. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a sufficient causal connection existed between her protected activity and her employer's adverse employment action. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989); *Dwyer v. Smith*, 867 F.2d 184, 190–91 (4th Cir.1989).

■ Defendants argue that Plaintiff's retaliation claim must be dismissed because she has not alleged that she suffered "final and adverse" employment action as a result of her protected activity. Defs.Mem. at 12–13. Defendants contend that the conduct alleged, even if proven, must be considered only "mediate" and not "final and adverse" action. Plaintiff contends, however, that "Defendants' threats were clear and unambiguous, and retaliatory in the purest sense of the word." Pl.'s Mem. at 6.

In defining what constitutes an adverse employment action, the Fourth Circuit observed, in *Page v. Bolger*, 645 F.2d 227 (4th Cir.), *cert. denied*, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981), that inquiries into whether there has been an employment action adversely affecting an employee have "consistently focused on the question of whether there has been discrimination in what could be characterized as ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 233. *See Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822, 836 (D.Md.1994), *aff'd*, 77 F.3d 745, *cert. denied*, —— U.S. ——, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996); *Caussade v. Brown*, 924 F.Supp. 693, 700–02 (D.Md.1996), *aff'd*, 107 F.3d 865 (4th Cir.1997). Some courts have expanded the definition of "adverse employment action" to include actions that would "adversely affect one's professional reputation or ability to gain future employment, whether or not there was an ultimate employment decision." *Howze v. Virginia Polytechnic*, 901 F.Supp. 1091, 1098 (W.D.Va. 1995) (citing *Nelson v. Upsala College*, 51 F.3d 383, 387 (3d Cir.1995); *Passer v. American Chem. Soc'y*, 935 F.2d 322, 331 (D.C.Cir. 1991) (ADEA case)).

█ I am persuaded that the complaint's allegations are sufficient to support the conclusion that Defendants have taken "adverse employment action" against Plaintiff so as to make out a cognizable claim of retaliation under Title VII. Title VII proscribes retaliation so that an employee will not forego filing a charge out of fear that she may lose her job or suffer other reprisals from her employer if she files one. *Mead v. United States Fidelity & Guaranty Co.*, 442 F.Supp. 114, 132 (D.Minn.1977). The court in *Mead* observed that "Congress intended that persons who file charges with EEOC are to be fully protected from any retaliation, both to secure the rights of the charging party and to avoid chilling the actions of others who might sue to implement the guarantees of [Title VII]." *Id.*

Here, Plaintiff alleges that her employer has systematically and repeatedly ridiculed, insulted, and *threatened* her with tangible adverse action, *i.e.*, reassignment, because of her protected activity. Such conduct (taken specifically in response to an invocation of rights under the statute) may constitute retaliation within the meaning of Title VII, even if there is no actual reassignment, firing, demotion or failure to promote. *See Jensvold v. Shalala*, 829 F.Supp. 131, 136–37, 139 (D.Md.1993) (some significant steps in the employment–related decision–making process otherwise "mediate" may constitute retaliation under Title VII); *Arnold v. City of Seminole, Okl.*, 614 F.Supp. 853 (E.D.Okl. 1985) (illegal retaliation occurs when supervisory police officers foster a hostile work environment in response to allegations of sexual harassment); *Mead*, 442 F.Supp. at 124–27, 129 (cognizable retaliatory acts include monitoring of work, checking for errors and making notations in personnel file, all in a concerted effort to "document[ ]" a basis for firing employee). A contrary conclusion would mean that an employer could effectively thwart employees' efforts to exercise their statutory rights through well-timed retaliation, and enforcement of the statute would be left to those few stout–hearted victims willing to call the employer's bluff. Such a regime would denude Title VII of its vitality. Accordingly, Plaintiff's retaliation claim may proceed.

(vi)

█ Generally, a plaintiff may bring a Title VII action only "against the respondent named in the [administrative] charge" after administrative proceedings have ended or conciliation attempts failed. 42 U.S.C. § 2000e–5(f)(1). *See Alvarado v. Bd. of Trustees of Montgomery Community College*, 848 F.2d 457, 458 (4th Cir.1988); *Mickel v. South Carolina State Employment Service*, 377 F.2d 239, 242 (4th Cir.1967), *cert. denied*, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166. The rationale for the naming requirement is two–fold: (1) to provide notice to the charged party and (2) to permit EEOC to attempt voluntary conciliation of complaints "by bring[ing] the charged party before the EEOC". *Alvarado*, 848 F.2d at 460.

█ Though an express precondition to suit, the naming requirement is not a significant barrier to consideration of claims on the merits. *But see Mayo v. Questech Inc.*, 727 F.Supp. 1007, 1012 n. 12 (E.D.Va. 1989) (noting that naming requirement is a jurisdictional requirement in suit against federal agencies). Title VII does not require "procedural exactness" from laypersons. *Id.* As the *Alvarado* court emphasized, " 'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.' " *Alvarado*, 848 F.2d at 460 (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir.1975)). *See also Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir.1981) (court is required, by the remedial purposes of Title VII and the lack of legal training among those whom it is designed to protect, to construe an EEOC charge with the "utmost liberality"), *vacated on other grounds sub nom. Int'l Asso. of Machinists and Aerospace Workers v. Terrell*, 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479 (1982); *Mayo*, 727 F.Supp. at 1010–12 (failure to name defendants in EEOC complaint is not a fatal error). The court in *Terrell* held that unnamed defendants may be sued if they are within the "scope of the EEOC investigation which could reasonably

grow out of the administrative charges." *Terrell,* 644 F.2d at 1123; *Anderson v. Phelps,* 655 F.Supp. 560, 562 (M.D.La.1985) (same).

■ Further, a long line of authority makes plain that individuals may be sued in their official capacity if they are substantially identified with the defendant organization named in the EEOC charge. *See Eggleston v. Chicago Journeymen Plumbers' Local 130,* 657 F.2d 890, 905–06 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977); *McAdoo v. Toll,* 591 F.Supp. 1399, 1403–04 (D.Md. 1984); *Jeter v. Boswell,* 554 F.Supp. 946 (N.D.W.Va.1983); *Brewster v. Shockley,* 554 F.Supp. 365 (W.D.Va.1983); *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670, 688–89 (D.Md.1979); *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 785 (D.Md. 1978); *Chastang v. Flynn & Emrich Co.,* 365 F.Supp. 957 (D.Md.1973), *aff'd in relevant part,* 541 F.2d 1040 (4th Cir.1976).

In the instant case, it is undisputed of course that the administrative charge named only the Bel Air Police Department as the employer.[4] Nevertheless, I am persuaded that the naming requirement is satisfied and that the exercise of jurisdiction over the Town of Bel Air and over all the individual defendants in their official capacity (except defendant Ross) is proper.[5]

■ A defendant may be sued if the defendant has constructive knowledge of an EEOC charge and is within the scope of the EEOC investigation. *See Terrell,* 644 F.2d at 1123. Plaintiff understandably named her employer—the Bel Air Police Department— in the EEOC charge. Suit against the Town and Defendant McFaul, the Town Administrator, is proper because each is essentially an alter ego of the police department and the Town is the only suable entity. *Cf.* Fed. R.Civ.P. 17, 19 and 21. Neither Defendant has suggested a lack of knowledge of the filing of the various charges and no prejudice is alleged or apparent.

Furthermore, allowing Plaintiff to proceed against all of the individual defendants but Ross in their official capacities does not remotely undermine the twin goals of the naming requirement. *See Alvarado,* 848 F.2d at 458–461. These Defendants were, either by name or title, referenced in Plaintiff's EEOC charge. Thus, the twofold purpose of the naming requirement has been fulfilled: Plaintiff's EEOC charge gave Defendants reasonably adequate notice of alleged Title VII violations, and permitted the EEOC to initiate conciliation efforts. Necessarily, all of the Defendants would have been encompassed by a reasonable EEOC investigation into Plaintiff's charges. There is no discernable reason, therefore, to dismiss the official capacity claims against the individual defendants other than Ross.

The authorities relied on by Defendants do not require a different result. For example, in *Harris v. Norfolk and Western R.R.,* 720 F.Supp. 567 (W.D.Va.1989), a former employee brought suit against her former employer, the Norfolk Southern Corporation, alleging, *inter alia,* wrongful demotion and termination based on gender discrimination under Title VII. *Id.* at 569. In addition to suing Norfolk Southern, the *Harris* plaintiff also attempted to sue two individuals in their personal capacity and a separate corporate entity, none of whom were named as respondents in the EEOC charge. *Id.* Harris was not a sexual harassment case, and the other defendants were not in any way connected to the EEOC charge. *Id.* In the instant case, Plaintiff referred to the individual defendants in her EEOC charge, and they are directly

---

4. Defendants make the disingenuous contention that the Department is the only properly joined defendant but that it is also "the only Defendant without an independent legal existence," Def. Mem. at 7, and therefore the entire case should be dismissed for lack of jurisdiction. This is precisely the kind of ipsie dixit the cases warn against. As the court in *Mayo* observed, "[t]o hold [that a plaintiff's failure to name a defendant should absolutely bar a lawsuit] would transform the naming requirement into a trap for

the unwary lay complainants, a result at odds with Title VII's remedial goals." 727 F.Supp. at 1012.

5. Ross does not seem to be mentioned in the EEOC charges although he may well have been named in the complaint filed with the Harford County Human Relations Commission. *But see supra* n. 2.

connected to the sexual harassment allegations. Thus, the individual defendants (other than Ross) are within the "scope of the EEOC investigation which could reasonably grow out of the administrative charges." *Terrell*, 644 F.2d at 1123.

In short, a civil action should be barred for failure to satisfy the naming requirement only "where ... (i) there is demonstrable prejudice to the unnamed parties or (ii) the interests of the named and unnamed parties are so distinct that inexcusable failure to name a party frustrates Title VII's conciliation goals." *Mayo*, 727 F.Supp. at 1012. That is not the situation in this case. As discussed above, Defendants were reasonably notified of Plaintiff's allegations at the administrative stage and the EEOC had an opportunity to initiate voluntary conciliation efforts. Accordingly, Defendants' challenge to the propriety of the Title VII claims is unavailing.

### (vii)

Defendants challenge Plaintiff's attempt to impose personal liability upon the individual defendants. Title VII's prohibition against gender discrimination, 42 U.S.C. § 2000e–2(a), provides: "It shall be an unlawful employment practice for an employer—(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[.]" Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and *any agent* of such a person." 42 U.S.C. § 2000e(b) (1988) (emphasis added).

In *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990) (en banc), the Court held that a supervisory employee could be held personally liable under the above provisions of Title VII, provided he or she has significant input into an employee's relevant conditions of employment. In *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), however, in construing the language of the Age Discrimination in Employment Act (ADEA), the Court limited civil liability to the employer, and prohibited the imposition of personal liability upon a supervisor. The Court in *Birkbeck* determined that the use of the term "agent" in the definition of "employer" under the ADEA did not create individual liability, but instead merely reiterated the principle of *respondeat superior*. 30 F.3d at 510. The rationale of *Birkbeck* is that "personal liability would place a heavy burden on those who routinely make personnel decisions for enterprises employing twenty or more persons." *Id.* Moreover, if Congress in enacting the ADEA did not intend to cover employers who had less than twenty employees, then it would be "incongruous" to apply it to an individual who supervises less than twenty employees. *Id.* Making the employer liable "ensures that no employee could violate another's rights with impunity." *Id.*

*Birkbeck* interpreted the language of ADEA, but the definitions of "employer" in the ADEA and Title VII are almost identical. *See Harvey v. Blake*, 913 F.2d 226, 227–28 (5th Cir.1990); *Lane v. David P. Jacobson & Co.*, 880 F.Supp. 1091, 1095 (E.D.Va.1995) (recognizing similarities in the statutory schemes of ADEA and Title VII). In a footnote, the *Birkbeck* Court clarified that "[a]n employee, however, may not be shielded [from personal liability] in all circumstances. We address here only personnel decisions of a *plainly delegable* character." *Birkbeck*, 30 F.3d 507 at 510, n. 1 (emphasis supplied), citing *Paroline*. Based on the footnote in *Birkbeck*, district courts in employment discrimination cases have focused on whether the acts of the supervisor were "delegable" in determining whether the term "employer" applies to individual supervisors, but there exists no agreement as to whether *Birkbeck* can be reconciled with *Paroline* in any principled way. *Compare Turner v. Randolph County*, 912 F.Supp. 182, 185 (M.D.N.C.1995), *with Mitchell v. RJK of Gloucester, Inc.*, 899 F.Supp. 246 (E.D.Va. 1995).

I am persuaded here that the gravamen of Plaintiff's claims—being non–sexual at their core, and not involving any allegation of sexual touching or other grossly offensive conduct—does not involve the kind of "non–

delegable" activities recognized by the cases as sufficient to support the imposition of personal liability under Title VII. Retaliatory and discriminatory acts based on the victim's gender such as reassignments, increased or "do–over" tasks and the like are precisely the kind of delegable employment–related acts for which personal liability may not be imposed under the *Birkbeck* footnote. Accordingly, the individual capacity claims shall be dismissed.

(viii)

For the reasons set forth herein, Defendants' motion will be granted in part and denied in part.