**Jennifer FRANCIS, Plaintiff,**

v.

**BOARD OF SCHOOL COMMISSIONERS OF BALTIMORE CITY, et al., Defendants.**

**No. Civ. AMD 97–4015.**

United States District Court, D. Maryland.

Jan. 11, 1999.

Kenneth W. Ravenell, Schulman, Treem, Kaminkow & Gilden, Baltimore, MD, for plaintiff.

Jerome A. Nicholas, Baltimore City Solicitors Office, Baltimore, MD, Joanne Evans–Anderson, Office of the City Solicitor, Baltimore, MD, Sandra Holmes, Department of Education, Office of Legal Counsel, Baltimore, MD, Craig Richburg, Craig F. Ballew, Ferguson, Schetelich & Heffernan, Baltimore, MD, for defendants.

## MEMORANDUM

DAVIS, District Judge.

Jennifer Francis brought this action against her employer, the Board of School

Commissioners of Baltimore City ("the Board"), and her former supervisor, Craig Richburg,[1] alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and battery under Maryland law. Pending before the Court are the Board's motions to disqualify Francis' attorneys, to strike the affidavit of Walter G. Amprey, the former Superintendent of Education for Baltimore City and for summary judgment. These matters have been thoroughly briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons discussed below, I will grant the Board's motion for summary judgment, and therefore the motion to disqualify and to strike need not be addressed.

## I. FACTS

The material facts are undisputed or, if disputed, shall be set forth in the light most favorable to plaintiff. Francis has been employed by the Board since 1986. She is currently assigned as an Accountant II in the Finance Department. In January 1994, the Baltimore Civil Service Commission determined that Francis was unqualified (e.g., Francis' college degree was in *accounting* ) for appointment to the position of EDP Procurement Manager in the Board's Management Information Services Department ("MIS"). Nevertheless, in late March 1994, while she was still assigned to the Finance Department, Francis was transferred to MIS as *Acting* EDP Procurement Manager at the specific request of MIS's then-Director, Terry Laster, who thereby became her supervisor.

Laster did not follow the customary appointment procedures in arranging Francis' transfer to MIS and Francis did not complete a formal application process. Francis' official title remained Accountant II and she did not receive an increase in pay for her duties as Acting EDP Procurement Manager. According to the Board's evidence, Francis was officially "on loan" from the Finance Department to MIS. In the light most favorable to Francis, the record reveals that Laster intended to effect a major reorganization of MIS and that, as a part of the reorganization, the criteria for the EDP Procurement Manager position would be revised so that Francis would qualify.

The reorganization never occurred and in August 1995, Laster was removed from his position. Richburg succeeded Laster as MIS Director in October 1995.[2] For approximately one month, Richburg was Francis' supervisor. On November 1, 1995, Francis' assignment as Acting EDP Procurement Manager ended and she was reassigned to the Finance Department. It is undisputed that both at the time Francis was named Acting EDP Procurement Manager by Laster (in March 1994) as well as when she was reassigned to the Finance Department (in November 1995) she did not satisfy the education and experience prerequisites for the EDP Procurement Manager position.

The gravamen of Francis' claims focuses upon the reasons for her failure to be appointed EDP Procurement Manager on a permanent basis and her consequent reassignment to the Finance Department. Francis contends that she was discriminatorily denied a promotion to EDP Procurement Manager, reassigned to the Finance Department and stripped of her supervisory responsibilities because she refused Richburg's demands of sexual favors. On the other hand, the Board contends that the undisputed facts

---

1. In light of the Fourth Circuit's recent holding in *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 181 (4th Cir.1998), that individual supervisors can not be held liable under Title VII, I granted judgment in favor of Richburg on the Title VII claims. I declined to exercise pendent party jurisdiction over Richburg as to the state battery claim and dismissed that claim without prejudice. Accordingly, Richburg is no longer a party to this litigation.

2. Seemingly, Francis alleges as a part of her claims that she was in charge of MIS during the month of September 1995 and thus, her subsequent reassignment to the Finance Department caused her to lose significant supervisory authority. The record reveals, however, to the extent that Francis was in charge of MIS, it was only as an assistant to Ms. Beverly Crest, who was formally placed in charge of MIS as Acting Director during the brief interregnum between Laster and Richburg, and to whom the Superintendent sent a special note of appreciation for her service during that period.

demonstrate that (1) notwithstanding her 18 month tenure as Acting EDP Procurement Manager, Francis did not qualify for appointment as EDP Procurement Manager, and (2) Francis was reassigned to the Finance Department at her request.[3]

Francis alleges that when Richburg became her supervisor, he engaged in sexually harassing conduct towards her. Specifically, she claims that (1) Richburg requested sexual favors from her in return for a promotion to the permanent position of EDP Procurement Manager; (2) Richburg repeatedly accused Francis of having a sexual relationship with her former supervisor, Laster, and repeatedly inquired of other employees if such a sexual relationship occurred; (3) Richburg commented on Francis' body on one occasion, specifically, on the shape of her legs and waist; and (4) Richburg squeezed Francis' waist on one occasion.[4] Francis refused Richburg's alleged advances and contends that in response he denied her the promotion and procured her reassignment to the Finance Department. In addition, even after Francis left MIS, she claims, Richburg continued to ask her if she had had a sexual relationship with Laster.[5] On one occasion, such a question was asked over a speaker phone and at least four or five other employees were present and overheard the remark, presumably causing embarrassment to Francis.

In December 1995, after her reassignment to the Finance Department, and prompted by a particularly offensive telephone conversation with Richburg, Francis wrote a letter to Dr. Walter Amprey, the then Superintendent of Baltimore City Public Schools, complaining about Richburg's conduct and requesting a meeting with Amprey to discuss the matter. Francis sent copies of the letter to several school officials and to Richburg as well. This was the first time Francis formally complained to any official of the Board about Richburg. Although the Board maintained a non-harassment policy and had in place procedures to deal with complaints of same, Francis had been afraid of potential adverse consequences to herself if she had complained earlier. In February 1996, agents of the Board contacted Francis and inquired if she still desired to have such a meeting. Francis responded in writing, indicating that Richburg's harassment had ceased after her December 1995 letter. Thus, Francis no longer desired to have a

3. Although Francis repeatedly complains on deposition and in her papers before the court about the effects of her reassignment to the Finance Department, as a matter of law, I deem her sexual harassment claims to be predicated on her failure to receive a promotion to EDP Procurement Manager. The record reveals that Francis was only *acting* as EDP Procurement Manager during Laster's tenure in MIS. Having failed to receive a permanent appointment as EDP Procurement Manager, the Board's only appropriate move would be to place her back in the Finance Department or in some other permanent position. Thus, as a matter of law, what she refers to as her *transfer*—if it can accurately be called such—was an expected consequence of her non-promotion to EDP Procurement Manager. The transfer or reassignment merely placed Francis back in her original department, with her original title and at her original salary, albeit with slightly reduced supervisory duties. Thus, the reassignment to the Finance Department by itself would not be actionable as an adverse employment action. *See Caussade v. Brown,* 924 F.Supp. 693, 701 (D.Md.1996), *aff'd* 107 F.3d 865, 1997 WL 82622 (4th Cir.1997) (table); *see also Mentch v. Eastern Savings Bank, FSB,* 949 F.Supp. 1236, 1238, n. 1 (D.Md.1997). Notably, apart from the quid pro quo claim discussed in text, Francis has not asserted that her non-pro-

motion was the result of conventional disparate treatment sex discrimination. Rather, she has confined her claims strictly to the alleged sexual harassment claims discussed in text *infra* at pp. 322–25.

Moreover, even if Francis' reassignment to the Finance Department—apart from the non-promotion to EDP Procurement Manager—were cognizable, the record reveals that Francis herself requested a transfer back to the Finance Department, even prior to Richburg's entry into the MIS department. Henry Raymond, then-Chief Financial Officer, testified through affidavit that Francis requested to be reassigned to Finance. In addition, two other employees testified that before, and after, Richburg became Francis' supervisor, she desired to return to her former department.

4. Richburg denies these allegations but they shall be accepted as true for purposes of the pending motion for summary judgment.

5. After her reassignment, Francis remained in the same building as Richburg but worked on a different floor. Francis claims that during this time, Richburg walked by her desk almost every day and whispered her name in a teasing manner.

meeting, was satisfied that her complaint was "on record," and she requested simply that the matter "remain open."

Nevertheless, the Board conducted an investigation into these and other allegations of Richburg's misconduct. As a result of the investigation, in part, the Board removed Richburg from his position, reprimanded him, and ultimately discharged him in October 1996 when his position was abolished.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Har-*

dy, 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Shealy*, 929 F.2d at 1012.

## III. ANALYSIS

### A. Timeliness of Francis's Exhaustion of Administrative Remedies

The Board argues that Francis' Title VII claims are time-barred because she did not file a complaint with the EEOC within 180 days. Under Title VII, a "complainant must file a discrimination charge with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice or ... if a complainant initially institutes proceedings with a state or local agency having authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is extended to 300 days." *EEOC v. Commercial Office Prod. Co.*, 486 U.S. 107, 108 S.Ct. 1666, 1668, 100 L.Ed.2d 96 (1988). A work-sharing agreement between the Maryland Commission on Human Relations ("MCHR") and the EEOC gives "primary responsibility to the EEOC to process all charges filed between 180 and 300 days of the alleged discrimination." *EEOC v. Techalloy*, 894 F.2d 676, 678 (4th Cir.1990). Thus, a charge is deemed timely if it is sent to the EEOC within 300 days after the alleged unlawful practice. *See id.* at 679 (holding that a complaint filed with the EEOC no later than the 299th day after the alleged unlawful practice was timely). Thus, since Francis filed her complaint with the EEOC 209 days after the last alleged unlawful practice, it was timely filed.

### B. Sexual Harassment Claims

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Francis has brought two claims of sexual harassment under Title VII: quid pro quo and hostile work environment. *See Burlington Indus., Inc. v. Ellerth,* —— U.S. ——, ——, 118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998); *see also Spencer v. General Elec. Co.,* 894 F.2d 651, 658 (4th Cir.1990) ("This Circuit has acknowledged ... two varieties [of sexual discrimination]: harassment that creates an offensive (hostile) work environment and harassment where sexual consideration is demanded in exchange for job benefits."). On neither of these theories does Francis avoid summary judgment.

#### 1. Quid Pro Quo Sexual Harassment

"Quid pro quo sexual harassment occurs when an employer conditions, explicitly or implicitly, the receipt of a job benefit or a tangible job detriment on the employee's acceptance or rejection of sexual advances." *Reinhold v. Virginia,* 135 F.3d 920, 931 (4th Cir.1998), *opinion withdrawn and superseded by* 151 F.3d 172 (4th Cir.1998) (vacating its earlier judgment in light of *Ellerth*); *Campbell v. Masten,* 955 F.Supp. 526, 529 (D.Md.1997) (stating that quid pro quo sexual harassment includes an employer's "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when submission to such conduct is made explicitly or implicitly a term or condition of an individual's employment.") (citing 29 C.F.R. § 1604.11(a)).

▅▅ To satisfy the elements of the prima facie case for quid pro quo sexual harassment, Francis must show that (1) she is a member of a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was because of sex; (4) her reaction to the harassment affected tangible aspects of her compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should

have known of the harassment and took no effective remedial action.[6] *See Spencer,* 894 F.2d at 657. If Francis satisfies her prima facie case, the burden of production shifts to the Board to "rebut [the presumption of sexual harassment] with legitimate, nondiscriminatory reasons for the employment decision in question." *Id.* at 659. Assuming the Board satisfies this burden, the burden then shifts back to Francis to prove that the alleged nondiscriminatory reasons were pretextual and that the true reason for the employment decision was sexually-discriminatory criteria. *See id.; see generally McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

▅▅ For two separate reasons, Francis has failed to establish the fourth element required to satisfy the prima facie case for quid pro quo sexual harassment. Although there is no dispute that Francis is a member of a protected group and that the alleged harassment was unwelcome and "because of sex," Francis has failed to demonstrate that she "suffered any tangible job detriment" as a result of rejecting Richburg's alleged sexual advances. *Reinhold,* 135 F.3d at 932. To satisfy this element, Francis "must prove that she was [1] deprived of a job benefit which she was *otherwise qualified to receive* [2] *because of the employer's use of a prohibited criterion* in making the employment decision." *Spencer,* 894 F.2d at 658 (emphasis added). Although Francis has argued that she was denied a promotion to the position of EDP Procurement Manager and reassigned to the Finance Department because she rejected Richburg's demands for sexual favors, she has failed to project competent admissible evidence of causation and, even more importantly, she has failed to demonstrate that she was "otherwise qualified" for the EDP Procurement Manager position.

In support of her assertion that her rejection of Richburg's demand for sexual favors caused her non-promotion and subsequent return to the Finance Department, Francis

---

6. The fifth prong of the prima facie case "is automatically satisfied where the sexual harass- ment is committed by one of the employer's supervisors." *Reinhold,* 135 F.3d at 931.

relies on Amprey's affidavit. Therein, Amprey states that it was his "understanding" that another employee of the Board felt that Francis was a problem for Richburg: "The Plaintiff was being transferred to the Finance Department consistent with her training and background. It was my understanding that [the transferring official] felt [Ms. Francis] was a problem for Mr. Richburg." Amprey Aff. ¶ 4. This statement does not remotely generate a genuine dispute of material fact enabling Francis to avoid summary judgment as to her quid pro quo claim. First, Amprey's affidavit is wholly silent as to the reason for Francis' non-promotion. Thus, it lacks any probative value on the only real issue in this case.

More fundamentally, Amprey's "understanding" does not reflect personal knowledge of the situation and is therefore incompetent, as a witness may only testify as to facts of which he has personal knowledge. *See* F.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Thus, apart from her subjective belief that she failed to receive a promotion to the position of Procurement Manager because she rejected Richburg's demands for sexual favors, Francis fails to offer even a scintilla of evidence to support her claim that she was denied the position she sought (and then reassigned) *because of* her rejection of Richburg's advances.

Furthermore, even if it is assumed that Richburg was the appointing authority (a fact not established in the record) and could have appointed *anyone* he chose to the position of EDP Procurement Manager (an assumption which is affirmatively undermined in the record), Title VII has never been interpreted to recognize a claim on behalf of one who is *unqualified* for the position which was denied. This is no less true of victims of quid pro quo sexual harassment discrimination than it is of other victims of invidious discrimination.

The record discloses that the Civil Service Commission, on two separate occasions, determined that *Francis was not qualified* for the position of EDP Procurement Manager.

In January 1994, the Commission denied Francis an appointment to EDP Procurement Manager because she was not qualified. Later, after Laster had arranged for Francis to serve as Acting Procurement Manager for many months, Laster requested that Francis receive "out-of-title" pay for her duties in MIS. The Commission denied this request, reasoning that because Francis was not on the current eligibles list for the position, she remained unqualified for the position. Because Francis can not demonstrate that she was "otherwise qualified" for the position she alleges she was deprived of (and indeed, she seems to concede the point), her prima facie case for quid pro quo sexual harassment fails. This result is dictated by the case Francis has presented. She has not sought to challenge the Civil Service Commission's determination that even after serving as Acting Procurement Manager she remained unqualified for the position. She has presented no evidence whatsoever that the determination of "unqualified" was erroneous or was based on a sexually discriminatory evaluation or selection process. Accordingly, the Board's motion for summary judgment on Francis' quid pro quo claim will be granted.

### 2. Hostile Work Environment

Francis also claims that Richburg's conduct created a hostile work environment for which the Board is liable. The scope of Title VII includes a cause of action for a hostile work environment based on sex. *See Ellerth*, 118 S.Ct. at 2264; *Faragher v. Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To sustain a claim of hostile work environment sexual harassment under Title VII, Francis must demonstrate sufficient evidence that (1) the conduct alleged was unwelcome; (2) it was based on her sex; (3) it was sufficiently severe or pervasive to alter her conditions of employment and to create an abusive or hostile work environment; and (4) it was imputable on some factual basis to her employer. *See Spicer v. Virginia, Dept. of Corrections*, 66 F.3d 705, 710 (4th Cir.1995) (en banc); *cf. Scannell v. Bel Air Police Dept.*, 968 F.Supp. 1059, 1063 (D.Md.1997). The parties do not

dispute that the conduct complained of was unwelcome, or that it was based on sex. The Board argues, however, *inter alia,* that it is not liable because the alleged conduct was not sufficiently severe or pervasive to be actionable under Title VII and that the Board took appropriate action to respond to Francis' complaint of sexual harassment.[7]

To determine whether Richburg's alleged conduct is sufficiently severe or pervasive to bring it within the proscription of Title VII, I must examine "all the circumstances, [including] the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Scannell,* 968 F.Supp. at 1063 (citing *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994) (internal citations omitted)). "To succeed on a hostile environment claim, [Francis] must first demonstrate that the harassment interfered with her ability to perform her work or significantly affected her psychological well-being." *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir.1989), *vacated in pt. on other grounds,* 900 F.2d 27 (4th Cir.1990) (en banc). If Francis can satisfy that burden, the court must then determine "whether the harassment would interfere with the work performance or significantly affect the psychological well-being of a reasonable person in the plaintiff's position." *Id.*

Examining all of the circumstances in the light most favorable to plaintiff, I am persuaded that Francis has not satisfied her burden to demonstrate that the incidents alleged are sufficiently severe or pervasive to come within Title VII's purview. Francis has failed to demonstrate that "the harassment interfered with her ability to perform her work or significantly affected her psychological well-being." *Id.* Although Richburg's alleged conduct is insulting, distasteful and unquestionably improper under any circumstances, Francis has failed to show that she was unable to perform her job or that her psychological well-being was significantly altered. Francis did not miss a day of work, did not see a psychiatrist or medical doctor, and did not receive any complaints about her work performance as a result of Richburg's alleged conduct. Moreover, Richburg acted as Francis' supervisor for no more than 20 days, from October 9 through November 1, 1995.[8] This does not mean, of course, that an harasser gets a "free pass" for some minimal period; rather it is simply a recognition of the common sense notion that one factor in the severity and pervasiveness analysis is its temporal dimension.

Ultimately, although Francis contends that she was (justifiably and understandably) upset by Richburg's behavior and cried once at work, this showing is too insubstantial to permit a reasonable jury to conclude by a preponderance of the evidence that Richburg's obnoxious behavior was severe and

7. The Supreme Court has recently clarified the standard for employer liability in sexual harassment cases. *See Faragher,* 118 S.Ct. at 2292; *Ellerth,* 118 S.Ct. at 2270. These cases announced that:
   [A]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. [The affirmative defense] comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher,* 118 S.Ct. at 2292. Accordingly, whether or not the Board took sufficient action to address Francis' complaint would not go to Francis' case on liability. Rather, it would be for the Board to demonstrate as an affirmative defense. Because I conclude that the alleged sexual harassment in this case is not sufficiently "severe or pervasive" to sustain Francis' Title VII claim, it is not necessary to address the Board's available affirmative defense.

8. *Francis alleges that on two occasions in December, after she had stopped working for Richburg, he asked her if she had a sexual relationship with Laster. These two incidents, even taken together with the events that allegedly occurred during the 20 days under Richburg's supervision, are not sufficient to persuade a reasonable trier of fact that the conduct was severe or pervasive.*

pervasive and thus does not suffice under the circumstances of this case to sustain her Title VII claim.[9]

A major component of Francis' claim is that she was embarrassed and humiliated by her reassignment to the Finance Department.[10] However, the reassignment was not in retaliation for complaining about Richburg's conduct and it occurred prior to her official complaint to the Board. Furthermore, as discussed at length above, there is undisputed evidence that Francis was not qualified for the EDP Procurement Manager position. Francis did not lose any pay and her title was not changed in connection with her reassignment. Although she asserts that her new position with the Finance Department afforded her less supervisory duties than the position she occupied prior to leaving the department, she fails to demonstrate any evidence that this change was a consequence of Richburg's harassment of her.[11] Thus, she has failed to demonstrate that Richburg's alleged harassment was sufficiently severe or pervasive to affect a term or condition of her employment. *See also Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.1996), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996) (affirming summary judgment for defendant because supervisor's alleged harassment in sexual innuendos, jokes, and physical contact with plaintiff did not establish a sufficiently hostile working environment); *Dwyer v. Smith*, 867 F.2d 184, 187 (4th Cir.1989) (affirming directed verdict in favor of defendant because plaintiff's complaints that she was subjected to pornographic material in her mailbox, was accused of having sex with other workers, and was subject to sexually explicit conversations was not sufficiently severe or pervasive); *Raley v. Board of St. Mary's County Comm'rs*, 752 F.Supp. 1272, 1280 (D.Md.1990) (granting summary judgment for defendant because the actions complained of, consisting of isolated incidents of offensive touching and sexual innuendos were not sufficiently severe); *Boarman v. Sullivan*, 769 F.Supp. 904, 911 (D.Md.1991) (granting summary judgment for defendant who had allegedly asked the plaintiff to close his office door and remove all her clothing).

"The 'line between a merely unpleasant working environment ... and a hostile or deeply repugnant one' is not always easy to draw." *Scannell*, 968 F.Supp. at 1063 (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir.1995)). In light of all of Francis' allegations under all the circumstances of this case, I am constrained to conclude as a matter of law that they do not rise to the level of severity or pervasiveness required to sustain her Title VII action. Accordingly, I will grant the Board's motion for summary judgment.[12]

## V. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment shall be granted. An order follows.

9. Francis also declares that she wore pants during the whole time she worked for Richburg. This, however, does not indicate that her ability to perform her work was interfered with or that her psychological well-being was significantly affected.

10. Francis testified that she suffered pain and suffering in that she "lost money that [she] was supposed—I lost a job position ... I didn't get paid for the position I worked in for the time that I did it...." *See* Pl.'s Dep. at 86. The record establishes, as a matter of fact and law, however, it was the Civil Service Commission which decided Francis should not get increased compensation for her duties as Acting Procurement Manager, not Richburg.

11. During her 18 month absence from the Finance Department, Francis' initial position had been filled by another and thus, upon her reassignment in November 1995, Francis was placed in a new position. There is no difference in pay between the two positions, although Francis is no longer supervising the employees that she supervised while in her initial position.

12. Since all of Francis' federal claims have been disposed of, I decline to exercise pendent jurisdiction over Francis' state battery claim. In the event that Francis brings her battery claim against Richburg in state court, she is free, of course, to join the Board as a defendant. It appears exceedingly unlikely that she would have success against the Board on that claim. *See Tall v. Board of Sch. Comm. of Baltimore City*, 120 Md.App. 236, 706 A.2d 659, 667–68 (1998).