Lori P. GRIMES, Plaintiff,

v.

CANADIAN AMERICAN TRANS-
PORTATION, C.A.T. (U.S.),
INC., Defendant.

No. 7:98CV00409.

United States District Court,
W.D. Virginia,
Roanoke Division.

July 28, 1999.

Terry Neill Grimes, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, VA, for Plaintiff.

Charles H. Osterhoudt, Kristen Konrad Johnstone, Osterhoudt, Ferguson & Natt, Roanoke, VA, for Defendant.

## *MEMORANDUM OPINION*

KISER, Senior District Judge.

Before me are two motions for summary judgment brought by the defendant Canadian American Transportation, C.A.T. (U.S.), Inc. ("C.A.T."). The first motion, filed March 11, 1999 alleges that C.A.T. is not a proper defendant in this sexual discrimination case because it was not the employer of plaintiff Lori Grimes at the time of the offenses complained of. It is the defendant's position that the plaintiff has failed to exhaust her state remedies by 42 U.S.C. § 2000e–5(c). For the reasons set forth in this Memorandum Opinion, both motions are hereby DENIED.

**1.** The complaint does not make clear exactly what Mr. Gelinas' position was within the

## I. FACTS

The complaint alleges the following facts. The plaintiff, Lori Grimes, first went to work for Canadian American Transportation C.A.T. (U.S.), Inc. ("C.A.T.") in June, 1989. Sometime around September 1995, Ms. Grimes began to work in the Covington, Virginia office of C.A.T.'s C.A.T. Logistics, Inc. ("C.A.T.Logistics") division. Beginning in June, 1996, Ms. Grimes began to have difficulty in her personal interactions with fellow employee Claude Gelinas.[1] At some point, Gelinas reported to the corporate home office in Canada that the plaintiff was not willing to work with him. The plaintiff was then told by her bosses that Gelinas was important to the company and that the plaintiff should be cooperative with him. By the end of July, 1996, Gelinas began to touch the plaintiff in an inappropriate manner. On August 2, 1996, Gelinas asked if he could visit the plaintiff at home. She declined. Gelinas then telephoned her repeatedly asking if he could come to her house. Although she informed him that he could not because she had other plans, Gelinas eventually came over anyway and became very upset and agitated, stating that he was lonely and that he missed his native country of Canada. On August 7, 1996, the plaintiff scheduled a meeting with the company president, Jean Gagnon, to inform him of Mr. Gelinas' inappropriate behavior. At that meeting, Mr. Gagnon told the plaintiff that the company needed to retain Mr. Gelinas until he completed work on a specific accounting problem the company was facing, and that Gelinas would remain employed. On August 13, 1996, Terry Crone, the vice-president of the company, handed the plaintiff a letter stating that she wished to withdraw her sexual harassment claim and told her to sign it. She refused. On September 26, 1996, Mr. Crone terminated plaintiff's employment.

organization, but it can be inferred that he performed some kind of supervisory role.

On June 26, 1998, Ms. Grimes filed a two-count complaint in this Court alleging sexual harassment in violation of Title VII and Virginia common law (Count I) and assault and battery in violation of Virginia common law (Count II). C.A.T. and Mr. Gelinas were named as defendants. Later, the parties agreed, correctly, that under *Lissau v. Southern Food Service*, 159 F.3d 177 (4th Cir.1998), Mr. Gelinas cannot be held liable in his individual capacity for sexual harassment.

## II   SUMMARY JUDGMENT MOTION OF MARCH 11, 1999

■ The defendant C.A.T. has alleged that Ms. Grimes was not, in fact, employed by C.A.T. at the time of the offenses complained of, and was instead the employee of C.A.T. Logistics. The defendant contends that if C.A.T. Logistics was the employer for Title VII purposes, then C.A.T. is entitled to summary judgment.

A review of the discovery materials and specifically the affidavit of Jean Gagnon submitted by the defendant, reveals that the defendant's position is without merit. It is undisputed that C.A.T. retained Ms. Grimes on its payroll after she began working for C.A.T. Logistics. Affidavit of Jean Gagnon, 2. Ms. Grimes received her employee insurance and 401(k) benefits through C.A.T. Id. at 3. Furthermore, C.A.T. Logistics is a wholly-owned subsidiary of a wholly-owned subsidiary of C.A.T. Id. at 1. Mr. Gagnon owns fifty percent (50%) of the stock of all three corporate entities. Furthermore, Ms. Grimes has testified that her move from the home office of C.A.T. to C.A.T. Logistics was merely an intra-company transfer, and her employment with C.A.T. was continuous. Affidavit of Lori Grimes, ¶¶ 2–4. In support, she notes that she did not, at any time, fill out an employment application with C.A.T. Logistics, that her W–2 forms continued to be issued by C.A.T., and that throughout the time she was based in the C.A.T. Logistics office, she continued to perform work in the nearby C.A.T. offices as well. Id.

I think the evidence is legion that Ms. Grimes was employed by C.A.T. during all relevant times and the defendant's summary judgment motion on that issue must fail.

## III.   SUMMARY JUDGMENT MOTION OF JUNE 30, 1999

This motion is based on the defendant's contention that this Court does not have subject matter jurisdiction over this suit. The defendant maintains that the plaintiff has not satisfied the statutory prerequisites under 42 U.S.C. § 2000e–5(c) which states:

> [i]n case of an alleged unlawful employment practice in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the state or local law unless proceedings have been earlier terminated.

■ In *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435 (4th Cir.1998), the Fourth Circuit held that Virginia is a deferral state within the meaning of Title VII, meaning that Virginia qualifies as a state which has state or local law prohibiting unlawful employment practices. Persons seeking to pursue a federal employment discrimination claim in a deferral state must first exhaust their state remedies. *Davis v. North Carolina Dept. of Correction*, 48 F.3d 134 (4th Cir.1995); *Tinsley*, 155 F.3d 435. Although Virginia does not recognize sexual discrimination as an independent tort, the Fourth Circuit has explicitly held that the Virginia Human Rights Act, Va.Code §§ 2.1–715 et seq. ("VHRA"), which broadly prohibits discriminatory practices, falls under the rubric of a prohibitory state law for pur-

poses of § 2000e–5(c). *Tinsley,* 155 F.3d at 440. In turn, the VHRA delegates its enforcement authority with the Virginia Council on Human Rights ("VCHR"). The VCHR may investigate claims of discriminatory practices and seek "voluntary conciliation to obtain compensation or other redress for individuals aggrieved by unlawful employment practices." *Tinsley,* 155 F.3d at 440. The Fourth Circuit, in *Tinsley,* made clear that this limited power, to receive and process complaints, and to attempt mediation where desirable, is all that is necessary to qualify Virginia as a deferral state, and the VCHR as a deferral agency. 155 F.3d at 440–441. Thus, for the EEOC to properly issue a right to sue notice, thereby giving this Court subject matter jurisdiction over Ms. Grimes' complaint, it is clear that she must first have filed a claim of discrimination under the state law prohibiting discrimination, the Virginia Human Rights Act, with the appropriate agency, the Virginia Council on Human Rights.

In my mind, the question of whether a plaintiff has complied with the provisions of § 2000e–5(c) presents three separate but related issues: (1) whether the filing of a charge with the EEOC where the plaintiff indicates that she would like the charge forwarded to the Virginia deferral agency constitutes a "filing" with the VCHR under an EEOC–VCHR worksharing agreement, (2) whether, if such an EEOC filing is tantamount to a VCHR filing, and with no further action by the plaintiff, this course of action "exhausts" her state remedies where the Virginia agency takes no action on the complaint and returns the charge to the EEOC, and (3) and perhaps most interestingly, whether § 2000e–5(c) is satisfied where the plaintiff's EEOC filing does not cite the state statutory violation alleged.

The plaintiff in this case filed her EEOC charge on April 11, 1997. While the plaintiff did mark the box on the charge requesting the EEOC refer the claim to the VCHR, she did not cite the code section of the VHRA or any other Virginia law in either the body of the charge or her supporting affidavit, nor did the plaintiff ever independently initiate proceedings with the VCHR.

On April 17, 1997, pursuant to a worksharing agreement between the EEOC and the VCHR, the EEOC forwarded Ms. Grimes' charge to the VCHR, along with an EEOC Form 212. The Form 212 indicated the date the charge had been initially received by the EEOC and also had a checked box which said that "pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC." The bottom portion of the form instructed the VCHR to complete the form acknowledging receipt of the charge and indicating whether the VCHR intended to "initially investigate." The VCHR signed and returned the form to the EEOC on April 21, 1997. The VCHR had checked a box indicating that they did not intend to initially investigate the charge. The EEOC issued a right to sue notice on March 31, 1998.

■ Given these facts, I must determine if Ms. Grimes' filing of a charge with the EEOC is a sufficient filing with the VCHR. I find that it is. The EEOC and the VCHR are parties to a worksharing agreement of the sort that is fairly common between state and federal enforcement agencies in a variety of contexts. This worksharing agreement was executed for the express purpose of "provid[ing] individuals with an efficient procedure for obtaining redress for their grievances." Worksharing Agreement Between Virginia Council on Human Rights and Equal Employment Opportunity Commission for Fiscal Year 1997, ¶ I–B. The agreement also states: "In order to facilitate the assertion of employment rights, the EEOC and the [state fair employment practices agency] each designate the other as its agent for the purpose of receiving and drafting charges." Worksharing Agreement, ¶ II–A. The agreement establishes that within ten days of receipt of a complaint, either agency will notify both the charging party

and the respondent of the dual-filled nature of the charge and explain the rights and responsibilities of the parties under applicable federal and state law.

The agreement also contains the following provision:

> For charges originally received by the EEOC and/or to be initially processed by the EEOC, the [VCHR] waives its rights of exclusive jurisdiction to initially process such charges for a period of 60 days for the purposes of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

Worksharing Agreement, ¶ III-A-1. This provision clearly contemplates that the VCHR deems a charge filed with it when it is filed with the EEOC. Otherwise, it would not be necessary for the VCHR to waive its right to process the charge for the purpose of allowing the EEOC to proceed immediately.

I think that a plain reading of the worksharing agreement supports an interpretation by which a charge filed initially with one agency is, pursuant to the agreement, considered simultaneously filed with the other. I think to impose upon the plaintiff the requirement that she file with both agencies in order to meet her statutory responsibilities is to eviscerate the purpose of the agreement. The Fifth Circuit considered this very question in *Urrutia v. Valero Energy, Corp.*, 841 F.2d 123, 125 (5th Cir.1988), and came to a similar conclusion. That court found that "the requirement that the persons aggrieved must initially institute proceedings with the state deferral agency is met by the EEOC's routine transmittal of a copy of the complaint to the state deferral agency." (citing *EEOC v. Comm'l Office Products Co.*, 803 F.2d 581, 585–86 (10th Cir. 1986); *Isaac v. Harvard Univ.*, 769 F.2d 817, 819 (1st Cir.1985)). The Fifth Circuit reasoned:

> To require more would merely impose a meaningless bureaucratic ritual on these agencies. Under the terms of the Worksharing Agreement, the [state agency] had already agreed that the EEOC was to have exclusive responsibility for processing all claims filed between 180 and 300 days after the alleged violations of Title VII. Since the [state agency] had already waived jurisdiction over Title VII claims filed within this time frame, all that was required to institute state proceedings was a nominal filing with the state agency, which was accomplished when the EEOC transmitted appellant's discrimination charge on a standard form on August 8, 1985. We hold that such proceedings were thereby initially instituted.

*Id.* I find this reasoning persuasive, and will decline to contribute to the creation of more "meaningless bureaucratic ritual" by requiring anything more of Ms. Grimes.

■ I next examine whether the mere filing with the VCHR via the EEOC transmission, with no further action by the plaintiff, is an exhaustion of her state remedies. Again, I find that it is. Although this issue spawned animated discussion at oral argument, I simply am not convinced that there is anything more the plaintiff could have done in pursuit of her state grievance. She was in no position to either know the internal progress of her claim with the VCHR or to force its pursuit of the claim on her behalf. Given the fact that Virginia lacks a common law cause of action for sexual discrimination, the entire extent of her "remedy" with the state was the possibility that the state might investigate and mediate the claim. Therefore, once she had notified the appropriate agency of the existence of an allegation, the only body able to act on her behalf was that agency. The agency declined to do so, as evidenced by the Form 212 the VCHR returned to the EEOC indicating that the VCHR would not undertake an initial investigation. I therefore find that Ms. Grimes properly exhausted her available state remedies when she filed her charge with the EEOC and indicated that she wanted the charge for-

warded to the Virginia deferral agency. To require more would unfairly burden plaintiffs in search of redress.

■ Finally, I come to the question of whether Ms. Grimes' discrimination charge filed with the EEOC properly sets forth a state claim, so that such a claim may be considered properly filed with the VCHR under the dual filing agreement.[2] The defendant's position is that in order for Ms. Grimes to successfully file a state claim with the VCHR through the worksharing agreement, she must specifically identify the state claim which she is asserting. In lieu of specific identification of the state violation claimed within the EEOC charge, the defendant maintains that Ms. Grimes could only have asserted a state claim in accordance with the statute by filing a separate charge with the VCHR. I disagree. The Virginia Human Rights Act states that

It is the policy of the Commonwealth of Virginia [t]o safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status or disability ... in employment.

Va.Code § 2.1–715. The Act goes on to say that

Conduct which violates any Virginia or federal statute or regulation governing discrimination on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status or disability shall be an "unlawful discriminatory practice" for purposes of this chapter.

Va.Code § 2.1–716. In her EEOC Charge of Discrimination, Ms. Grimes set forth the following allegations:

I went to work for C.A.T. (Canadian American Transport) in June, 1989. Beginning in July, 1996, Claude Gelinas, the comptroller, began to touch me in a way that I found offensive. He rubbed my shoulders, touched my arm, rubbed my leg, touched my breasts and put his finger inside the waistband of my pants. He also called me at home on several occasions trying to get me to let him come over to my home. I complained to the company president, John Gagnon, and he said he would take care of the matter. About August 13, 1996, Terry Crone, the vice president, asked me to sign a letter stating that I wished to withdraw my complaints about sexual harassment concerning Mr. Gelinas. I refused to do so. The company then fired me on September 26, 1996.

I believe I have been subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

Ms. Grimes' EEOC charge clearly alleges facts which, if true, state a claim upon which relief should be granted under state law. The VHRA essentially makes any federal violation a violation of Virginia law as well. Thus, by setting forth facts that would establish a possible Title VII claim, she has also set forth facts which indicate a possible violation of the VHRA, and would give rise to VCHR authority for the proposition that § 2000e–5(c) demands more specificity than that. If, for example, Ms. Grimes had not explicitly identified a possible Title VII violation (which she did), her charge would not be deficient for purposes of pursuing that federal claim before the EEOC. I see no reason why a state filing requires more, because, as I

---

2. The defendant contends that the Fourth Circuit has already addressed this issue in *Dodge v. Philip Morris Inc.*, 175 F.3d 1014 (4th Cir. 1999) (unpublished). In that case, the Fourth Circuit held that a plaintiff had not properly pursued her state claims so as to satisfy § 2000e–5(c). The plaintiff in that case, however, had failed to indicate on her EEOC charge form that she wanted the EEOC to forward her discrimination charge to the Virginia deferral agency. On those facts, the Fourth Circuit found that the plaintiff had failed to exhaust her state remedies. I think that is somewhat different from the case presented before this Court.

have stated earlier, this filing was tantamount to a direct state filing with the VCHR. Federal Rule of Civil Procedure 8 requires merely a "short and plain statement of the grounds upon which the court's jurisdiction depends." It is simply a notice requirement, designed to ensure that the parties involved are aware of the substance of the charge. I believe this is the extent of the charge requirements here as well. I cannot fathom why we would demand from unsophisticated plaintiffs more than the Federal Rules demand from lawyers who file complaints. To do so would be to interpose hurdles heretofore invisible to the naked eye between aggrieved plaintiffs and their access to the federal courts. This I decline to do.

CONCLUSION

I am aware that Judge Williams reached a different result from the one I reach here today in the recent case of *Walker v. Electrolux Corp.*, 55 F.Supp.2d 501 (W.D.Va.1999).[3] The *Walker* opinion does not discuss the "pleading requirement" that a complainant must meet in setting forth her charge of discrimination. It would seem, however, that the opinion would require a specific section of the Virginia Code be cited. For the reasons enumerated above, however, I must respectfully disagree with this conclusion. In light of this conflict of authority in the Western District of Virginia, I shall STAY further proceedings in this lawsuit until the Fourth Circuit has had the opportunity to address the issue.

The defendant's motions for summary judgment are hereby **DENIED.**

An appropriate order shall issue.

---

**3.** United States Magistrate Judge Crigler has also recently addressed a variation on this theme in *Harris v. The TJX Companies, Inc.*, 98–0094–H (W.D.Va. July 15, 1999). In that case, Judge Crigler decided that an ADA plaintiff had exhausted his state remedies under § 2000e–5(c) where the EEOC had transmitted the charge to the VCHR pursuant to the worksharing agreement and, as in the instant case, the VCHR had declined to investigate. Judge Crigler's decision, however, does not reach the issue of what the plaintiff is required to set forth in the EEOC charge in order to have properly pled a state claim.