Tammy L. LONDEREE, Plaintiff,

v.

CRUTCHFIELD CORP.,
et al., Defendants.

Civ. Action No. 99–031–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 29, 1999.

Tammy L. Londeree, Charlottesville, VA, pro se.

Bruce M. Steen, Kerri Borchardt Taylor, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

On June 21, 1999, the presiding United States Magistrate heard arguments from the *pro se* plaintiff and the defendants' counsel regarding the defendants' motion to dismiss in accordance with an Order by this court permitting the Magistrate to conduct proceedings appropriate for the resolution of dispositive pretrial matters and to submit to this court proposed findings of fact and recommendations for their resolution pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate filed his Report and Recommendation with the court on July 22, 1999, granting the defendants' motion for lack of personal jurisdiction. The plaintiff objects to the Report and Recommendation alleging she had "good cause" for her untimely service of process upon the defendants and begs the court's forgiveness. Under § 636(b)(1)(C), this court "shall make a de novo determination of those portions of the report . . . to which the objection is made." Having thoroughly considered the issue, the court agrees with the result reached by the Magistrate Judge, and thus, will adopt the Report and Recommendation in part.

## I.

### A. Factual Background

Plaintiff Tammy L. Londeree is a female previously employed as a warehouse packer by defendant Crutchfield Corporation. The defendant corporation has at least 15 employees and is engaged in an industry affecting commerce. Defendant Jeff Clatterbuck was the plaintiff's supervisor at Crutchfield Corporation. Defendant Mark Maynard was both the plaintiff's and defendant Clatterbuck's superior.

The plaintiff was involved in a consensual sexual relationship with Defendant Clatterbuck for several months in 1996; however, the relationship ended in late December 1996. In January 1997, defendant Clatterbuck and several of his associates began harassing the plaintiff with sexual comments and innuendoes.[1] Although, the plaintiff informed defendant Clatterbuck she wished for these statements to cease, the comments continued and became more explicit.

In mid-January, the plaintiff reported the sexual harassment to the management. In turn, the management issued a "Sexual Harassment Policy" to inform employees that any unfair treatment of employees by supervisors or other co-workers would not be condoned or tolerated. On January 23, 1997, defendant Clatterbuck was warned by letter that he must comply with the new policy. However, management continued to permit him to supervise the plaintiff even though they previously informed her she would no longer be supervised by defendant Clatterbuck or his counterpart, defendant Schumaker. Clat-

---

1. The plaintiff alleges that management and co-workers questioned her sexual status and that the group plotted for her to lose her virginity to defendant Clatterbuck. She further contends Clatterbuck touched her buttocks in front of other employees and made sucking motions with his mouth. As a result of his behavior, other employees referred to the plaintiff as a "dead f—k" and "prick tease" and made comments such as: "All talk, no action," "She asked for it," "When she bends over, she doesn't do anything for me," "Tammy wants to f—k Buck.,"and "You're going to have to rape her." (Pl.'s Mem. of Supp. to Reject Mot. to Dismiss & Pl.'s Compl.)

terbuck allegedly interfered with the plaintiff's attempts to perform her job by encouraging other employees to give her the wrong items for packing and by increasing the volume of the music in the warehouse. For the remaining months until she resigned in April 1997, the plaintiff made repeated complaints to management about Clatterbuck's inappropriate behavior which were ignored.

### B. Procedural Background

Plaintiff Londeree filed a complaint against defendants Crutchfield Corporation, Maynard and Clatterbuck on March 19, 1998, in the Circuit Court for the County of Albemarle. In Count I (¶¶ 22–27), Londeree alleged that defendant Clatterbuck sexually harassed her and that these actions constitute discrimination in the employment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(c), et seq. In Count III (¶¶ 33–37), Londeree alleged the defendants retaliated against her for reporting defendant Clatterbuck's sexual harassment. In Count IV (¶¶ 38–39), Londeree alleged the defendants' actions constitute the common law tort of intentional infliction of emotional distress.

On the same day the complaint was filed, the plaintiff was granted permission to proceed in forma pauperis. Almost a year later, on March 17, 1999, the state court received the plaintiff's Service Notice and filed a Notice of Motion for Judgment for the named defendants and defendants Bill Crutchfield, Keith Jones, Greg Bruce, and Susan Schumaker. On March 22, 1999, defendants Clatterbuck, Schumaker, Maynard, Bruce, and Jones were properly served with the complaint.[2] On March 24,

1999, defendant Crutchfield was properly served. The Crutchfield Corporation itself has not been served up to this point.[3] The case was removed to this Court on April 9, 1999. Jurisdiction was invoked pursuant to 28 U.S.C. § 1342, 42 U.S.C. §§ 2000c–5(f)(3) and 42 U.S.C. § 1988.

The defendants filed this Motion to Dismiss on April 9, 1999, requesting this court to dismiss plaintiff's claims as to defendants Crutchfield, Jones, Bruce and Schumaker because the plaintiff did not name them in the complaint; to dismiss plaintiff's complaint against all defendants because she failed to execute timely service of process of her complaint; to dismiss the federal claims against defendants Maynard and Clatterbuck because they are not liable to plaintiff in their individual capacities pursuant to 42 U.S.C. §§ 2000(e), et seq.; to dismiss the federal claims against defendants Maynard and Clatterbuck because the plaintiff failed to name these defendants as Respondents in her Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC"); and to dismiss plaintiff's state-law claim of intentional infliction of emotional distress for failure to state a claim upon which relief can be granted.

## II.

### A. Failure to Name in Complaint

■ Under Rule 10(a) of the Federal Rules of Civil Procedure the complaint must contain a caption setting forth the title of the action including the names of *all* the parties. The plaintiff's complaint was only brought against the Crutchfield Corporation, Mark Maynard and Jeff Clat-

---

**2.** The plaintiff claims she has forms proving service of process was completed on March 21. However, as the defendants' pointed out in their Response to the Plaintiff's Objections, this date is a Sunday and the records indicate that service was completed on March 22. Either way this is a distinction without difference as March 21 is still over a year after the filing of the complaint.

**3.** This is assuming that none of the other defendants were authorized by appointment or law to receive service of process for the corporation. The plaintiff requested at the motion to dismiss hearing to file service upon Crutchfield Corporation. However, as the Magistrate noted in denying this request, a plaintiff cannot correct in federal court what she failed to do in state court.

terbuck. However, the plaintiff attempted to serve Susan Schumaker, Greg Bruce, Keith Jones and Bill Crutchfield without amending her complaint to add these other defendants. Under Rule 15(a), the plaintiff may amend her complaint, but at this late date, only by leave of court if justice so requires or by consent of the adverse party. Rather than consent, the unnamed defendants contest the addition of their names. Further, the Magistrate Judge found, and this court agrees, in light of the defective service of process justice does not require the addition of the unnamed defendants to the complaint. As such, the motion to dismiss is granted in favor of defendants Schumaker, Bruce, Jones and Crutchfield.

## B. Defective Service of Process

 Under Rule 12(b)(2) of the Federal Rules of Civil Procedure a complaint may be dismissed for "lack of jurisdiction over the person." As the Magistrate noted, improper service of process renders a lack of in personam jurisdiction over a defendant. See generally Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 7.5 (3rd ed.1998) (discussing what type of service establishes in personam jurisdiction). A court is authorized to dismiss an action based on improper service when process is served more than one year after the Motion for Judgment is filed in the clerk's office. See Nelson v. Vaughan, 210 Va. 1, 168 S.E.2d 126, 127 (1969). The statutory authority for this dismissal is Rule 3:3 of the Rules of the Supreme Court of Virginia which sets forth "no judgement shall be entered against a defendant who was served with process more than one year after the commencement of the action against him unless the court finds as a fact that the plaintiff exercised due diligence to have timely service on him." Va. Rules Ann. 3:3(c).[4] A dismissal under Rule 3:3 is a dismissal with prejudice. See Gilbreath v. Brewster, 250 Va. 436, 463 S.E.2d 836, 838 (1995).

In the case at bar, the plaintiff filed her Motion for Judgment with the clerk's office on March 19, 1998. In order for the clerk to file a Notice of Motion for Judgment the statutory writ tax and clerk's fees must be paid. See Va. Rules Ann. 3:3(a). However, by an order dated on March 19, 1998, the plaintiff was given permission to file and proceed in forma pauperis relieving her of these court costs. In any event, the plaintiff did not file a Serving Notice with the clerk until March 17, 1999.[5] Unfortunately, service of process was not executed on any of the defendants until March 22, 1999, three days after the Rule 3:3 deadline expired. Accordingly, this court must dismiss the case unless it finds the plaintiff exercised due diligence to have timely service.

Initially, the plaintiff failed to put forth any reasons why she waited until two days before the deadline to file the Serving Notice. Instead, she asserted she should not be held responsible for her lack of timeliness to serve when her serving notice was taken over by the court, nor should she be blamed for the Sheriff's difficulty in finding all of the defendants. The Magistrate refused to recognize these excuses. After all, had the plaintiff given the clerk's office and Sheriff's department more than two days to effect service of process she would not have found herself in this situation.

However, in her objection to the Magistrate's Report and Recommendation, the plaintiff claims she should be excused for her late filing because of her mental health

---

**4.** Because the case was not removed to the federal courts until after the service of process was made, it is appropriate to follow the rules of civil procedure for the state rather than the federal rules. See generally Listle v. Milwaukee County, 926 F.Supp. 826 (E.D.Wis. 1996) (holding that improper service before removal could still be perfected after removal in accordance with state law).

**5.** The Clerk of Court cannot file the Notice of Motion for Judgment until it is requested by the plaintiff.

condition. The plaintiff allegedly suffers from post-traumatic stress syndrome as a result of the defendants' conduct and has been hospitalized five times since the filing of the complaint. She cites *Habib v. General Motors Corp.*, 15 F.3d 72 (6th Cir. 1994), in support of the notion that health conditions may justify "good cause," and thus, excuse untimely service of process. *Id.* at 74 (citing *Tso v. Delaney*, 969 F.2d 373 (7th Cir.1992)). However, the plaintiff's plea to excuse her own untimeliness on this basis is flawed because she confuses the "good cause" standard of the federal system and the "due diligence" standard of the Virginia state courts.

Under the Federal Rules of Civil Procedure, an untimely service of process may be excused if the plaintiff establishes "good cause." This broader standard requires a showing of "why service was not made within the time constraints" of the Federal Rules. *Id.* at 73. "Good cause" may encompass both health limitations and the plaintiff's diligent, reasonable efforts in attempting to serve the defendant. *See id.* at 74.

In contrast, Virginia courts mandate a showing of "due diligence." The Supreme Court of Virginia defines diligence as a "devoted and painstaking application to accomplish an undertaking." *See Dennis v. Jones*, 240 Va. 12, 393 S.E.2d 390, 393 (1990) (quoting Webster's Third New International Dictionary 633 (1981)). As the Magistrate stated, "The Court is talking about getting process effectuated, diligently pursuing your lawsuit." (Partial Tr. Of Hr'g on Defs.' Mot. to Dismiss.) With the "due diligence" standard other events occurring in one's life are not accounted for. Examples of cases where plaintiffs untimely service has been excused under this narrower standard include obstructions to service such as the lack of an address or an evasive defendant. *See T & S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D.W.Va.1996). There were no such obstructions to service in this case. Even if the plaintiff did not know where the defendants lived, she was well aware that all of the defendants worked for Crutchfield Corporation and could have requested service of process upon the defendants at their workplace before the expiration of the service deadline.

Moreover, it is difficult to demonstrate "devoted and painstaking" efforts when routine methods of service of process are readily available to the plaintiff. *See Dennis*, 393 S.E.2d at 394. With the order to proceed *in forma pauperis* the plaintiff was granted "all needful services and process" of all officers of the Court. (Order dated March 19, 1999.) Thus, the plaintiff was afforded all of the routine methods of service of process on March 19, 1998, but did not take advantage of those services until March 17, 1999. Because no obstruction of service exists and the plaintiff was provided all routine methods of process and still failed to serve the defendants within one year, the action is dismissed with prejudice against all of the defendants.

## C. Liability Not Extended to Supervisors in Their Individual Capacity

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure "failure to state a claim upon which relief can be granted" provides grounds for dismissal. For purposes of a Rule 12(b)(6) motion, all factual allegations in the plaintiff's complaint must be accepted as true. *See Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217–18 (4th Cir.1994). The plaintiff's complaint ought not be dismissed unless it is apparent that the plaintiff "would not be entitled to relief under any facts which could be proved in support of [his] claim[s]." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The plaintiff seeks to hold the defendants personally liable for their actions. However, the Fourth Circuit refuses to hold supervisors liable in their individual

capacities for Title VII violations.[6] *See Lissau v. Southern Food Serv. Inc.*, 159 F.3d 177, 181 (1998). The court reasoned the definition of employer including "any agent of such a person" signified that discriminatory actions taken by a supervisor creates liability for the employer under the doctrine of respondeat superior; however, it "did not signal a congressional desire to impose liability on individual supervisors." *Id.* at 180. Further, the court noted "it would make little sense to hold a single individual liable when Congress has expressly exempted all companies employing fewer than [fifteen] persons from the statute." *Id.* (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir.1994)). Finally, the court considered the 1991 amendments to Title VII which created a sliding scale of liability for different sizes of employers, but never mentioned individual liability as an available remedy. *See id.* at 181. In light of these justifications, the court held "[t]o permit individual liability would improperly expand the remedial scheme crafted by Congress." *Id.*

The plaintiff not only attempts to hold defendant Clatterbuck liable individually, but also seeks a judgment from all of the defendants jointly and severally. In accordance with the holding in *Lissau*, the plaintiff may only seek a judgment from her employer, Crutchfield Corporation. As to defendants Clatterbuck, Maynard, Crutchfield, Jones, Bruce and Schumaker, the plaintiff has failed to state a claim upon which relief can be granted and the action against these individuals must be dismissed.

**D. Failure to Name Defendants in EEOC Charge**

A prerequisite to filing a Title VII suit against a defendant is for the plaintiff to name the defendant in her charge to the EEOC. *See* 42 U.S.C.A. § 2000e–5(f)(1); *Mickel v. South Carolina State Employment Serv.*, 377 F.2d 239, 242 (4th Cir.1967). The Fourth Circuit has recognized that naming the defendant is important to allow the EEOC to enter into conciliatory negotiations with the parties. *See Causey v. Balog*, 162 F.3d 795, 800 (4th Cir.1998); *Mickel*, 377 F.2d at 242. These conciliation attempts are a "jurisdictional prerequisite to the institution of a civil action under Title VII and [ ] the actions instituted without this prerequisite must accordingly be dismissed." *Mickel*, 377 F.2d at 242 (quoting *Dent v. St. Louis–San Francisco Ry. Co.*, 265 F.Supp. 56 (N.D.Ala.1967)). Without a naming of all of the defendants, the EEOC is unable to enter into the required conciliatory negotiations.

As a consequence, the general rule is if "the plaintiff has failed to name any of the defendants in the EEOC charge, the plaintiff has failed to satisfy the jurisdictional requirements." *Harris v. Norfolk and W. Ry. Co.*, 720 F.Supp. 567, 568 (W.D.Va.1989). However, exceptions have been permitted to fulfill the purposes of Title VII, where the defendant has been notified of the discrimination violation and provided with an opportunity to participate in the voluntary conciliation process. *See Causey*, 162 F.3d at 800. In considering these requirements, two factual situations surface which necessitate an exception. First, where the party named in the complaint is for all practical purposes the same as the party named in the EEOC charge. *See Alvarado v. Board of*

---

6. The Fourth Circuit joined the majority of circuits in making this determination. *See generally Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2nd Cir.1995); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir.1999); *Hiller v. Brown*, No. 98–5014, 1999 U.S.App. Lexis 9625 (6th Cir. May 20, 1999); *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir.1998); *Lenhardt v. Basic Institute of Tech., Inc.*, 55 F.3d 377, 381 (8th Cir.1995); *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185 (9th Cir.1998); *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993);*Smith v. Lomax*, 45 F.3d 402 (11th Cir.1995); *Gary v. Long*, 59 F.3d 1391 (D.C.Cir.1995)(all refusing to recognize individual liability under Title VII).

*Trustees of Montgomery Community College,* 848 F.2d 457 (4th Cir.1988) (allowing an exception where the party named in the EEOC charge—Montgomery Community College—was by state statute the same as the parties named in the lawsuit—the Board of Trustees and the President of the Montgomery Community College); *Braswell v. Great Expectations, Inc.,* No. 5:97–CV–41–BRL, 1997 WL 1134125, at *2 (E.D.N.C. Aug.5, 1997) (holding when liability is premised on successor liability there is no need for the plaintiff to name all of the defendants in the EEOC charge).

 Second, where the defendants were given some notice of the EEOC violation, and thus, should have anticipated being named in the Title VII suit. *See Sosa v. Hiraoka,* 920 F.2d 1451, 1459 (9th Cir. 1990). When it can be inferred from the body of the EEOC charge that the unnamed defendant violated Title VII, that defendant can anticipate being sued. *See Scannell v. Bel Air Police Dep't,* 968 F.Supp. 1059, 1067 (D.Md.1997); *Sandom v. Travelers Mortgage Serv., Inc.,* 752 F.Supp. 1240, 1249 (D.N.J.1990). This inference is particularly strong where the parties are specifically named or referred to in the particulars of the charge. *See Scannell,* 968 F.Supp. at 1067. The rationale behind holding these defendants responsible though not named as Respondents is that "specific, as well as group, references to a party in the body of the charge is functionally analogous to being 'named,' because the reference fulfills the statutory purposes" of Title VII. *Sandom,* 752 F.Supp. at 1250. When individuals are named or referred to in the body of the charge, they will be encompassed by the EEOC investigation regarding the alleged violation, and thus, will be notified of the violation and provided an opportunity to engage in conciliation. *See Scannell,* 968 F.Supp. at 1067.

In the case at bar, the plaintiff only named the Crutchfield Corporation as Respondent in her Charge of Discrimination. (Mem. in Supp. of Mot. to Dismiss, Ex. A).

Defendants Clatterbuck, Jones and Maynard were mentioned in the particulars of her complaint; however, they were not named in the appropriate space. As a result of being named in the body of the charge, these defendants at some point had to become aware that their behavior towards the plaintiff might trigger a Title VII suit in which they could be named parties. Further, it is conceivable that Crutchfield would have called upon these defendants to explain their behavior during the course of the conciliation process. Thus, the purposes behind Title VII have been met and had the cases against these defendants not been dismissed for other reasons, suit against those named in the particulars would proceed. However, suit against the defendants not named in the particulars of the EEOC charge would fall under the general rule and be dismissed.

**E. Intentional Infliction of Emotional Distress**

 The claim for intentional infliction of emotional distress is a state law claim brought under pendent jurisdiction. Pendent jurisdiction exists where "different claims of law 'derive from a common nucleus of operative fact.'" *See Painter v. Harvey,* 863 F.2d 329, 332 (4th Cir.1988) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The court has discretion to address state law claims even where all federal claims are disposed of in favor of the defendants, but the "balance between judicial efficiency and comity is struck in favor of the federal court's disposition of the state law claims." *McLenagan v. Karnes,* 27 F.3d 1002, 1009 (4th Cir.1994). The court recognizes this claim may have some merit in a state court proceeding. However, because the court decides the federal claims in favor of the defendants on their motion to dismiss, the court also dismisses the state law claim.

**III.**

The defendants' Motion to Dismiss is granted under Rule 3:3 due to the plain-

tiff's untimely service of process. Procedure requires that service of process be effectuated within one year of the filing of the Motion for Judgment. The plaintiff failed to meet the service deadline. Further, the plaintiff is unable to establish that she exercised "due diligence" in effecting service of process. The court sympathizes with the plaintiff's situation, but cannot excuse her failure to meet the procedural requirements.

Even if service had been properly effectuated, other factors justify dismissal in this case. First, the claims against defendants Schumaker, Bruce, Jones and Crutchfield must be dismissed as they were not named as parties in the plaintiff's complaint. Second, the suits against defendants Maynard and Clatterbuck would have been dismissed as the majority of circuits have recognized that Title VII does not hold supervisors liable in their individual capacity. The only defendant remaining would have been defendant Crutchfield Corporation. The case would have proceeded against this defendant. However, because of the untimely service, the entire case shall be stricken from the docket with prejudice.

An appropriate order this day shall issue.

### FINAL ORDER

The above-captioned case was referred to the presiding United States Magistrate Judge to conduct proceedings appropriate for the resolution of dispositive pretrial matters and to submit to the court proposed findings of fact and recommendation for their resolution pursuant to 28 U.S.C. § 636(b)(1)(B). On June 21, 1999, the Magistrate heard arguments from the *pro se* plaintiff and the defendants' counsel regarding the defendants' Motion to Dismiss. On July 22, 1999, the Magistrate filed his Report and Recommendation with the court granting the defendants' motion for lack of personal jurisdiction.

The plaintiff filed an objection to the Report and Recommendation on July 29, 1999, and the defendants filed a response to the objection on August 11, 1999. Under § 636(b)(1)(C), this court "shall make a de novo review determination of those portions of the report ... to which the objection is made." After a thorough examination of the defendant's objection, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation, this court overrules the plaintiff's objection. For the reasons stated in the accompanying memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

that the defendants' Motion to Dismiss shall be, and hereby is, GRANTED for lack of personal jurisdiction over the defendants because of the untimely service of process.

The Clerk of the Court is hereby directed to strike this case from the docket and to send a certified copy of this Order to the Magistrate Judge and to all counsel of record.