**Sherika L. JONES, Plaintiff**

v.

**TYSON FOODS, INC. and Daniel G. Clarke, Defendants.**

**No. 3:04–CV–276.**

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 13, 2004.

Michael David Hancock, Michael D. Hancock PLLC, Richmond, VA, Charles Manley Allen, Jr., Goodman Allen & Filetti PLLC, Glen Allen, VA, for Plaintiff.

Rafael Eloy Morell, Michael Joseph Murphy, Ogletree Deakins Nash Smoak & Stewart PC, Washington, DC, Carolyn Pullin Carpenter, Carpenter Law Firm, Richmond, VA, for Defendants.

### MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on two separate Motions to Dismiss. Defendant Daniel Clarke moves to Dismiss Count One of Plaintiff's Complaint and requests that the Court decline to exercise jurisdiction over Count Two pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons discussed below, the Court hereby GRANTS Defendant Clarke's Motion to Dismiss Count One and GRANTS Defendant Clarke's 12(b)(1) Motion to Remand Count Two to State Court.

Defendant Tyson Foods also moves to Dismiss both Counts One and Two of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court also GRANTS Defendant Tyson Foods' Motion to Dismiss Counts One and Two of Plaintiff's Complaint.

## I.

### *Defendant Clarke's Motion to Dismiss*

Plaintiff Sherika L. Jones ("Plaintiff"), brings this action against her former employer, Tyson Foods, Inc. ("Defendant Tyson Foods") and her former supervisor, Daniel G. Clarke ("Defendant Clarke") under Title VII of the Civil Rights Act of 1964. Plaintiff is suing both Defendant Tyson Foods and Defendant Clarke in his individual capacity for sexual harassment under Title VII. Plaintiff also asserts a state law battery claim against both Defendant Tyson Foods and Defendant Clarke.

A Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court is to construe the complaint in the light most favorable to the plaintiff and its allegations are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, "legal conclusions couched as factual allegations" need not be accepted as true. *Forest Ambulance Serv. v. Mercy Ambulance,* 952 F.Supp. 296, 299 (E.D.Va. 1997). Dismissal is only appropriate when the complaint clearly demonstrates that the plaintiff does not have a claim.

### A. *Whether Defendant Clarke can be sued in his individual capacity under Title VII*

Title VII provides, in relevant part, that "[i]t shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). It defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e(b). The statute does not define "agent."

Plaintiff asks this Court to hold Defendant Clarke individually liable for his acts as her supervisor and an agent and employee of Tyson Foods, Inc. under Title VII. Plaintiff relies on the Fourth Circuit's holding in *Paroline v. Unisys Corp.,* 879 F.2d 100 (4th Cir.1989), *vacated in part on other grounds,* 900 F.2d 27 (4th Cir.1990) for the proposition that Defendant Clarke may be held individually liable under Title VII. In accordance with *Paroline,* Plaintiff alleges that Defendant Clarke served in a supervisory position and exercised significant control over her hiring, firing, and conditions of employment, and therefore may be held personally liable for his acts as her supervisor and agent of Tyson Foods.

Plaintiff, however, ignores the fact that the Fourth Circuit Court of Appeals overruled *Paroline,* with its decision in *Lissau v. Southern Food Service, Inc.,* 159 F.3d 177 (4th Cir.1998). The Court in *Lissau* specifically held that supervisors are not individually liable for violations of Title VII. *Id.,* at 181. The Fourth Circuit's decision in *Lissau* makes it clear that an employee who claims that she has been sexually harassed in the workplace must make her claim against her employer and not against the supervisor whom she claims sexually harassed her. *Id.*

The Court in *Lissau* based its decision upon Title VII's language and its remedial scheme. The Court applied the same analysis it used in addressing whether individual supervisors could be liable under the Age Discrimination in Employment Act ("ADEA") and held that the inclusion of "agent" in both the ADEA and Title VII did not signal Congress' desire to impose

liability on individual supervisors. *Lissau* at 180; *see Birkbeck v. Marvel Lighting Corp.* 30 F.3d 507, 510 (4th Cir.1994). In reviewing Title VII's remedial scheme, the *Lissau* Court further held that the 1991 amendments to Title VII suggest that Congress only intended employers to be liable for Title VII violations. *Lissau* at 181–82.

■ Plaintiff simply responds by arguing that the Fourth Circuit's prior decision in *Paroline* has never been effectively overruled. Plaintiff argues that the rule of interpanel accord prevents *Lissau* from having any precedential value because the Fourth Circuit decided *Paroline en banc*, while only a three-judge panel of the Court decided *Lissau*.

■ Plaintiff's interpanel accord argument is misguided. In courts of appeal, the decision of a panel is a decision of the court and carries the weight of stare decisis. *See Harter v. Vernon*, 101 F.3d 334, 343 (4th Cir.1996). The doctrine of interpanel accord, therefore, mandates that a decision of the Fourth Circuit be binding on other panels unless it is overruled by a subsequent *en banc* opinion of the Court or an intervening decision of the United States Supreme Court. *See Industrial Turnaround Corp. v. NLRB*, 115 F.3d 248, 254 (4th Cir.1997). Similarly, a district court in a circuit owes obedience to a decision of the court of appeals in that circuit and must follow it until the court of appeals overrules it. Moore's Federal Practice, 134.02(2), 3rd Ed., 2000. Accordingly, the Court does not have the authority to disregard the Fourth Circuit's decision in *Lissau*.

Plaintiff also makes several other arguments as to why the holding in *Lissau* is flawed, and argues that this Court should disregard the decision. However, every district court in Virginia to rule on the issue has also followed *Lissau*. *See John-*

*son v. Quin Rivers Agency for Community Action*, 128 F.Supp.2d 332, 335 (E.D.Va. 2001); *Collins v. Franklin*, 142 F.Supp.2d 749, 751 (W.D.Va.2000); *Grimes v. Canadian American Transp., C.A.T.*, 72 F.Supp.2d 629, 630–31 (W.D.Va.1999); *Barrett v. Applied Radiant Energy Corp.*, 70 F.Supp.2d 644, 647 (W.D.Va.1999); *Douty v. Irwin Mortg. Corp.*, 70 F.Supp.2d 626, 629 (E.D.Va.1999); *Londeree v. Crutchfield Corp.*, 68 F.Supp.2d 718, 723–24 (W.D.Va.1999); *see also Smith v. Culpepper County Dept of Soc. Servs.*, No. 98CV3, W.D.Va., December 23, 1998 (J. Michael); *Barrett v. The Applied Radiant Energy Corp.*, No. 98–0069–L, W.D.Va., December 28, 1998 (J. Moon); *Reeves v. Virginia Sept. of Correctional Education*, No. 02–0020, W.D.Va. Jan. 9, 2003 (J. Jones). This Court will not do what no other Court in this jurisdiction has done and rule in a way contrary to the prevailing view in every jurisdiction including this one. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995); *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir.1996); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994); *Wathen v. General Elec. Co.*, 115 F.3d 400, 406 (6th Cir.1997); *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir.1995); *Smith v. St. Bernards Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir.1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir.1993); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir.1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995). Therefore Count One of Plaintiff's Complaint must be dismissed as to Defendant Clarke.

B. *Whether the Court should exercise supplemental jurisdiction over count two*

■ Defendant Clarke also moves this Court to decline pendent jurisdiction over

Count Two, (Plaintiff's state common law battery claim), pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant Clarke argues that there is no federal jurisdiction for Plaintiff's Title VII claim against him, and therefore, the Court should neglect to exercise supplemental jurisdiction over the state law battery claim.

It has been well established that the decision to exercise supplemental jurisdiction after a federal claim has been dismissed, rests within the sole discretion of the Court. *See* 28 U.S.C. § 1367(c)(3); *Johnson v. Quinones,* 145 F.3d 164, 170 n. 4 (4th Cir.1998) (finding a district court does not abuse its discretion in declining to exercise supplemental jurisdiction over state law claims after it dismissed the federal claim); *Shanaghan v. Cahill,* 58 F.3d 106, 112–113 (4th Cir.1995) (recognizing that a court's exercise of discretion over state law claims is appropriate "so long as it was not a legal certainty from the outset that the plaintiff had no business being in federal court").

Although it is clear that Plaintiff had no recognizable federal claims against Defendant Clarke, the Complaint alleges both Federal and state law claims against a second Defendant, Tyson Foods. The same facts that give rise to Plaintiff's claims against Defendant Clarke are the facts alleged against Defendant Tyson Foods. Notions of judicial economy and efficiency would discourage proceeding in a way that would force Plaintiff's case to be proven twice, and leave the possibility of inconsistent results. However, in that the Court DISMISSES Counts One and Two as to Defendant Tyson Foods, the possibility of inconsistent results is no longer a factor, and the Court hereby GRANTS Defendant Clarke's Motion to Remand Count Two.

## II.

### *Defendant Tyson Foods' Motion to Dismiss*

#### A. *Facts*

Plaintiff alleges that she was employed by Tyson Foods, Inc. at its poultry processing plant as a production worker from April 14, 2003 until August 5, 2003. Defendant Clarke worked at the plant as a Shift Human Resources Supervisor from before Plaintiff started until July 2003, when his employment was terminated.

On June 3, 2003, a co-worker told Plaintiff that Defendant Clarke wanted to see her in his office. When Plaintiff arrived at his office, Defendant Clarke closed the door and asked Plaintiff to remove her work apron. She did. Defendant Clarke then asked Plaintiff how she would feel about dating an older man and how she would feel about going out with him. After Plaintiff responded that she had no interest, Defendant Clarke apologized to her and asked her for a hug. Plaintiff alleges that she consented to the hug and leaned her body into his. Defendant Clarke then allegedly told Plaintiff that he wanted to kiss her and proceeded to grab her buttocks, pulled her toward him, pressed his pelvic area into hers, and simulated the act of sexual intercourse. Plaintiff freed herself and left Defendant's office.

Plaintiff alleges that she immediately reported the incident to her supervisor, Juanita Harris. As a result, John Harrell, her shift manager, and Jeff Anderson, the Assistant Complex Human Resources Manager, met with Plaintiff. Mr. Anderson informed Plaintiff that he would conduct an investigation and get back to her. Defendant Clarke summoned Plaintiff to his office several days later. Plaintiff spoke with her supervisor Ms. Harris, and asked her to accompany her to Defendant

Clarke's office. Ms. Harris agreed. When Plaintiff arrived with Ms. Harris, Defendant Clarke asked Ms. Harris to leave. Ms. Harris refused to leave. Thereafter, Defendant Clarke dismissed Plaintiff and Ms. Harris from his office.

Within one week to ten days of the June 3 incident, Mr. Anderson and Mr. Paul Colluci, the Complex Human Resources Manager, met with Plaintiff to report on the results of the investigation into the incident. They allegedly informed Plaintiff that they determined that her charge was unfounded.

Shortly after her meeting with Messrs. Anderson and Colluci, news of the incident with Defendant Clarke became known to Plaintiff's co-workers. The Complaint does not allege who disclosed the incident. Plaintiff was allegedly made uncomfortable by some gossip about the incident. At the suggestion of her supervisor, Ms. Harris, Plaintiff was transferred to another production line. Plaintiff alleges that the gossip did not abate and she would at times see Defendant Clarke "staring at her from a distance." In July of 2003, Defendant Tyson Foods terminated Defendant Clarke's employment after two other female employees alleged that he had sexually harassed them.

Plaintiff alleges that the company neither acknowledged Defendant Clarke's illegal acts toward her or the other women harassed, nor did it state that Defendant Clarke was terminated as a result of the alleged harassment. Plaintiff also alleges that Tyson Foods did not investigate her complaint thoroughly or with a view toward ending the harassment.

Plaintiff further alleges that there have been multiple instances of sexual harassment at her work location, and that Defendant Tyson Foods has a pattern and practice of not investigating claims of sexual harassment in good faith. Finally Plaintiff alleges that Tyson Foods' failure to take appropriate action to address the multiple instances of sexual harassment, forced her to leave her job in August of 2003, one month *after* Defendant Clarke's employment was terminated.

### B. *Whether Plaintiff states a claim for constructive discharge under Title VII*

■ To establish a constructive discharge claim, a plaintiff must "show both intolerable working conditions and a deliberate effort by the employer to force the employee to quit." *Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir.1993). "Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit,'" while intolerability is "assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985). The court in *Bristow,* also explained that "[i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Bristow,* 770 F.2d at 1255.

Defendant Tyson Foods argues that Plaintiff has failed to make a claim for constructive discharge as a matter of law. Defendant argues that (1) Plaintiff does not allege facts (nor can she) which would support the conclusion that Tyson Foods' actions were intended as an effort to force her to leave her job; and (2) no reasonable person in Plaintiff's circumstances would feel compelled to resign.

Plaintiff's own allegations illustrate that Defendant Tyson Foods sought to retain her as an employee, and were not intended to force her to resign. According to Plaintiff, as soon as she complained about De-

fendant Clarke, Tyson Foods undertook an investigation. Also, when Defendant Clarke sought to speak with Plaintiff after the initial harassment incident, Plaintiff's supervisor accompanied her to Defendant Clarke's office and refused to leave. Furthermore, the Complaint itself alleges that when Plaintiff complained that she was uncomfortable with the working conditions at her previous production line, Defendant Tyson Foods immediately transferred her to another production line. Finally, after Defendant Clarke's harassing behavior was confirmed by other employees, Tyson Foods immediately terminated Clarke's employment, removing from the workplace the source of Plaintiff's alleged discomfort.

Plaintiff also makes an argument that her working conditions were intolerable. Plaintiff argues that being subjected to sexual battery, being the subject of gossip in the workplace, Tyson Foods effort to trivialize repeated instances of sexual harassment, and its failure to take appropriate action are all evidence of an intolerable work environment. Plaintiff argues that she has alleged an intolerable working environment and alleged that Defendant Tyson Foods failed to act in the face of those known intolerable conditions.

■■■ Assuming that Plaintiff has pled intolerable working conditions, her Title VII constructive discharge claim is still deficient. As stated above, *"both* intolerable working conditions *and* a deliberate effort by the employer to force the employee to quit"* are necessary to sustain a constructive discharge claim under Title VII. *Johnson,* 991 F.2d at 131 (emphasis added). Plaintiff has not pled sufficient facts to support an allegation of a deliberate effort on the part of Defendant Tyson Foods to force her to quit her job. Therefore, the Court must DISMISS Plaintiff's Constructive Discharge claim pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### C. *Whether Plaintiff can sustain a hostile work environment claim.*

Defendant also argues that Plaintiff is unable to state a hostile work environment claim under Title VII. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2003e–2(a)(1). To prevail on a hostile work environment claim, a plaintiff must prove: (1) that he or she was harassed "because of" his or her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 772 (4th Cir.1997). However, the Supreme Court in *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) warned that "there is no mathematically precise test" for determining when a hostile or abusive work environment exists. *Id.* at 22, 114 S.Ct. 367. The Court in *Harris* also warned that whether a hostile environment actually existed "can be determined only by looking at all the circumstances." *Id.* at 23, 114 S.Ct. 367.

■■■ The facts alleged are not severe or pervasive enough to create a hostile work environment. In analyzing whether harassment is severe and pervasive, courts generally consider (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it un-

reasonably interferes with an employee's work performance. *Id.*

Defendant Clarke's conduct was not frequent enough to create a hostile work environment. This case is analogous to *Tatum v. Hyatt Corp.*, 918 F.Supp. 5 (D.D.C.1994). In *Tatum*, the plaintiff alleged that:

> Michael Moussara, who held the position of Executive Steward at the Hotel, unexpectedly wrapped his arms around [the plaintiff's] neck and body, rubbing against her as if to simulate a sex act, made comments about her physical attractiveness, and otherwise harassed her sexually. Plaintiff cried out to a co-worker for help, but Moussara merely laughed. Eventually, plaintiff got away, but not before Moussara was able to place a piece of ice in plaintiff's front skirt pocket.

*Id.* at 6.

The court in *Tatum* granted the defendant's motion for summary judgment reasoning that because only a single isolated incident occurred and the employer took reasonable prophylactic steps to prevent a re-occurrence, the incident did not alter the plaintiff's employment conditions under the applicable legal standards. *Id.* at 6.

Likewise, in the matter at hand, Plaintiff only alleges one specific incident of sexual harassment, which allegedly took place on June 3, 2003, and admits that her employer took prophylactic measures to prevent a re-occurrence. Although Plaintiff is not satisfied with the investigation that Defen-

dant Tyson Foods conducted, Plaintiff essentially concedes that prophylactic measures were put into place when Plaintiff's supervisor agreed to accompany Plaintiff to Defendant Clarke's office, to prevent future cases of harassment. From the grabbing of Plaintiff's body parts to the rubbing and simulation of a sex act, the *Tatum* case and the case at bar are factually similar. Despite the severity of the one incident, like the plaintiff in *Tatum*, Plaintiff cannot establish a hostile working environment.[1]

### D. Whether Plaintiff is able to establish Respondeat Superior Liability for Battery

In determining whether an employer is liable under *respondeat superior* for an employee's tortious act, courts must determine whether the activity that gave rise to the tortious act was within the scope of employment, i.e. within the ordinary course of the employer's business. *Commercial Bus. Sys., Inc. v. BellSouth Services, Inc.*, 249 Va. 39, 453 S.E.2d 261 (1995). Such liability may be imposed, for example, where a supervisor is engaged in workplace duties or functions. Liability may not, however, be imposed solely on allegations that the harassment took place at the work place and during work hours. *See Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 81 S.E.2d 421 (1954). Under Virginia law, the employer bears the burden of proving that its employee was not acting within the scope of his or her employment when it commits a tortious act. *Plummer*

---

1. Defendant also questions whether incidents of "staring" and co-worker gossip are actionable as a hostile work environment claim. *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753–54 (4th Cir.1996) (where incidents of bumping into plaintiff, giving plaintiff a congratulatory kiss, positioning a magnifying glass over plaintiff's crotch, and staring at plaintiff in the bathroom were not considered

sufficiently severe or pervasive enough to establish a hostile work environment claim); *Bristow v. Daily Press. Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985) (Title VII does not guarantee a working environment free of stress). In that the Court holds that Plaintiff is unable to establish her hostile work environment claim against Defendant Tyson Foods, the Court will not address this issue.

*v. Center Psychiatrists,* 252 Va. 233, 476 S.E.2d 172, 174 (1996). Therefore, "if the evidence leaves the question in doubt it becomes an issue to be determined by the jury." *Id.*

Defendant Tyson Foods argues that the alleged actions of Defendant Clarke were not done within the ordinary course of Tyson Foods' business. Defendant concedes that Defendant Clarke's actions took place at the work place, but argues that Defendant Clarke was not engaged in his workplace duties or functions. The facts indicate that Defendant Clarke closed the door, asked Plaintiff on a date, asked to kiss her, and touched her. These actions were not done within the scope of Defendant Clarke's duties and were actions taken upon himself, outside the scope of his employment.

Defendant also argues that Defendant Clarke was not Plaintiff's supervisor. Defendant Tyson Foods alleges that Ms. Harris, not Mr. Clarke was Plaintiff's supervisor, and therefore, he was not acting within the scope of his employment. Accordingly, Plaintiff has not and cannot allege facts sufficient to establish *respondeat superior* liability.

Plaintiff disputes Defendants allegation that Defendant Clarke was not her supervisor, and alleges that he had supervisory authority over her. Plaintiff alleges that Defendant Clarke had the authority to "hire, fire, discipline and modify [her] working conditions." (Compl., ¶ 11). Plaintiff alleges that she believed that Mr. Clarke wanted to talk to her about work-related employment issues therefore, the harassment took place within the scope of Defendant Clarke's employment.

■ Even taking the facts in the light most favorable to Plaintiff, she has still failed to allege that the activity that gave rise to the tortious act was within the scope of Defendant Clarke's employment.

Defendant Clarke was not engaged in his workplace duties or functions when he asked Plaintiff on a date, attempted to kiss her, and touched her inappropriately. Plaintiff has failed to allege facts sufficient to establish a case of *respondeat superior* liability and therefore Defendant Tyson Foods' Motion to Dismiss Count Two must be GRANTED.

E. *Whether Plaintiff can recover punitive damages against Defendant Tyson Foods*

■ Defendant Tyson Foods argues in the alternative, that if the Court does not Dismiss Count Two, then the Court should dismiss Plaintiff's punitive damages claim against it. Under Virginia law, punitive damages are not awarded against an employer for the intentional torts of his employee unless the employer participated, authorized, or ratified the intentional tort. *Freeman v. Sproles,* 204 Va. 353, 131 S.E.2d 410, 414 (1963). Plaintiff seeks punitive damages jointly and severally from Defendants. Defendant Tyson Foods argues, however, that Plaintiff cannot recover such damages against it because Plaintiff does not allege that Tyson Foods participated, authorized, or ratified Defendant Clarke's alleged conduct. Plaintiff argues that Defendant's affirmative acts in covering up all the allegations of sexual harassment amounts to condonation of the conduct, if not tacit authorization or ratification. In that the Court dismisses Count Two as to Defendant Tyson Foods for failure to plead *respondeat superior* liability, the issue of punitive damages as to Defendant Tyson Foods is now MOOT.

## III.

For the reasons stated above, the Court hereby GRANTS Defendant's Clarke's

Motion to Dismiss Count One and GRANTS Defendant Clarke's 12(b)(1) Motion to Remand Count Two to State Court. The Court also GRANTS Defendant Tyson Foods' Motion to Dismiss Counts One and Two of Plaintiff's Complaint.